**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE THE CHEMOURS COMPANY SECURITIES LITIGATION | C.A. NO. 1:19-CV-01911-CFC Hon. Colm F. Connolly CLASS ACTION |
| This Document Related To: ALL ACTIONS. | |

**LEAD PLAINTIFF'S RESPONSE TO**
**DEFENDANTS' NOTICE OF SUBSEQUENT AUTHORITY**

Lead Plaintiff respectfully submits this response to Defendants' Notice of Subsequent Authority filed on October 19, 2021, concerning *In re 3M Company Securities Litigation*, 2021 WL 4482987 (D. Minn. Sept. 30, 2021) ("*3M*").[1] *See* D.I. 45. For the reasons set forth herein, the court's analysis in that out-of-circuit case only confirms why Defendants' Motion to Dismiss in this action should be denied.

*First*, unlike in *3M*—where the plaintiffs "[did] not allege facts showing that 3M had internal information that conflicted with what it disclosed to the public" (*3M,* at *12)—Defendants here have <u>admitted</u> in sworn, verified pleadings filed in Delaware Chancery Court, that for years they provided specific affirmative statements and estimates to the investing public of Chemours' environmental liabilities that were dramatically less than they internally acknowledged. Indeed, every quarter, Chemours provided precise maximum amounts that those liabilities purportedly only "potentially may range up to" in "remote," highly unlikely "adverse circumstances," and such amounts never exceeded $535 million and in fact <u>decreased</u> during the Class Period. Opp. at 9-11. In reality, and as set forth in Defendants' extraordinarily detailed complaint against DuPont, those same liabilities in fact totaled over <u>$2.5 billion</u>, dwarfing Chemours' Class Period accruals, and were so "obviously" "huge," "extraordinary" and "staggering" that, in

---

[1] Capitalized terms have the same meanings as in the Complaint (D.I. 30) or in the Memorandum of Law in Support of Lead Plaintiff's Opposition to Defendants' Motions to Dismiss ("Opp."). (D.I. 37).

Defendants' own words, "as of the date of the spin[off], <u>Chemours was insolvent</u>."

*See*, *e.g.*, Opp. at 3-4, 12-14, 38. None of these damning facts were present in *3M*.

*Second,* while in *3M* "the complaint [did] not provide any indication that Defendants knew of a reasonably estimable amount that 3M should have accrued," (*3M,* at \*10), the Complaint here is replete with such facts. Indeed, Defendants themselves itemized in their sworn pleadings $2.5 billion of inherited liabilities <u>as of the spin-off</u>, which directly conflicted with their public estimates and accruals <u>for those same liabilities</u>. Opp. at 3, 12-14, 19, 34. Moreover, statements from high-ranking former Chemours employees confirmed that Defendants' disclosure strategy was to deliberately <u>understate</u> inherited liabilities to bolster Chemours' stock price, including the former President of the Fluoroproducts business at Chemours, who stated that he had conducted an exhaustive internal evaluation of Chemours' remediation costs in the spring of 2018, which <u>totaled $2 billion</u>. Opp. at 6-7; 14-15. Significantly, Chemours admitted in its own sworn pleadings that Defendants Vergnano and Newman had personal knowledge from day one that the "<u>entire spinoff process</u>" was "<u>a sham</u>" deliberately designed to bury Chemours under "an unprecedentedly disproportionate allocation of assets, debts and liabilities"— including estimates for legacy environmental liabilities that Defendants admitted they knew were "<u>baseless concoctions</u>." Opp. at 3-4, 12-13. Again, none of these particularized allegations were present in *3M*.

2

*Third*, *3M* is further distinguishable as the challenged statements were "forward-looking, as their truth or falsity were discernible only after Defendants made them" and "the Complaint lacks facts showing that the Defendants had actual knowledge of falsity." *3M,* at *16. Here, Defendants possessed <u>numerous</u> concrete estimates of the same liabilities that they either dramatically understated, or falsely labeled as "not estimable." Opp. at 11, 40-41. Indeed, Chemours obviously did not sue its former parent DuPont for **$4 billion**, while claiming insolvency due to its inherited liabilities, because those same liabilities were merely theoretical or "remote." Opp. at 6-7, 20-21.

*Finally*, Defendants' claim that scienter was not found because auditors did not raise problems misses the mark. In *3M*, scienter was lacking because the plaintiffs did not "allege that Defendants were aware of, and did not disclose, information from which they could reasonably estimate the PFAS-related liability beyond what 3M had disclosed." *3M*, at *20. By contrast, in this case, Defendants' own sworn pleadings <u>admit</u> that Chemours' most senior officers (who were former DuPont lifers) knew and internally acknowledged for years that Chemours was burdened with massive, inevitable liabilities that had rendered it <u>insolvent from day one</u>. Opp. at 6, 9, 38-42.

Accordingly, for all of the reasons set forth above and in Lead Plaintiff's Opposition, the Court should deny Defendants' Motion in its entirety.

3

Dated:  October 21, 2021

Respectfully Submitted,

/s/     *Bruce E. Jameson*

Bruce E. Jameson (Bar No. 2931)
Marcus E. Montejo (Bar No. 4890)
Stephen D. Dargitz (Bar No. 3619)
**PRICKETT JONES & ELLIOTT, P.A**
1310 King Street
Wilmington, Delaware 19801
Telephone: (302) 888-6500
Facsimile: (302) 658-8111
bejameson@prickett.com
memontejo@prickett.com
sddargitz@prickett.com

*Liaison Counsel for the Class*

Maya Saxena
Joseph E. White III
Lester R. Hooker
Dianne M. Pitre
**SAXENA WHITE P.A.**
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com
dpitre@saxenawhite.com

Steven B. Singer
Kyla Grant
**SAXENA WHITE P.A.**
10 Bank Street
White Plains, New York 10606
Telephone: (914) 437-8551
Facsimile: (888) 216-2220
ssinger@saxenawhite.com

4

kgrant@saxenawhite.com

David R. Kaplan
**SAXENA WHITE P.A.**
12750 High Bluff Drive, Suite 475
San Diego, California 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com

*Counsel for Lead Plaintiff New York
State Teachers' Retirement System
and Lead Counsel for the Class*

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENT AND TYPE-VOLUME LIMITATION

This document complies with the type, font, and word limitations set forth in the Court's Standing Order Regarding Briefing in All Cases, as it is set in 14-point Times New Roman typeface. The document contains 695 words as counted by Microsoft Word, excluding the case caption and signature block

Dated:  October 21, 2021

Respectfully Submitted,

/s/     *Bruce E. Jameson*

Bruce E. Jameson (Bar No. 2931)
Marcus E. Montejo (Bar No. 4890)
Stephen D. Dargitz (Bar No. 3619)
**PRICKETT JONES & ELLIOTT, P.A**
1310 King Street
Wilmington, Delaware 19801
Telephone: (302) 888-6500
Facsimile: (302) 658-8111
bejameson@prickett.com
memontejo@prickett.com
sddargitz@prickett.com

*Liaison Counsel for the Class*

Maya Saxena
Joseph E. White III
Lester R. Hooker
Dianne M. Pitre
**SAXENA WHITE P.A.**
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com

6

lhooker@saxenawhite.com
dpitre@saxenawhite.com

Steven B. Singer
Kyla Grant
**SAXENA WHITE P.A.**
10 Bank Street
White Plains, New York 10606
Telephone: (914) 437-8551
Facsimile: (888) 216-2220
ssinger@saxenawhite.com
kgrant@saxenawhite.com

David R. Kaplan
**SAXENA WHITE P.A.**
12750 High Bluff Drive, Suite 475
San Diego, California 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com

*Counsel for Lead Plaintiff New York
State Teachers' Retirement System
and Lead Counsel for the Class*

7