**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE THE CHEMOURS COMPANY SECURITIES LITIGATION | C.A. NO. 1:19-CV-01911-CFC<br>Hon. Colm F. Connolly<br><br><u>CLASS ACTION</u> |
| This Document Related To:<br><br>    ALL ACTIONS. | |

**<u>LEAD PLAINTIFF'S RESPONSE TO</u>**
**<u>DEFENDANTS' NOTICE OF SUBSEQUENT AUTHORITY</u>**

Lead Plaintiff respectfully submits this response to Defendants' Notice of Subsequent Authority filed on November 2, 2021, concerning *In re the Chemours Co. Deriv. Litig.*, 2021 WL 5050285 (Del Ch. Nov. 1, 2021) (the "Derivative Action" and "Derivative Opinion").[1]  *See* D.I. 47.  For the reasons set forth herein, the Chancery Court's analysis in the Derivative Opinion—which does not concern any alleged violation of the federal securities laws—is entirely inapposite.

*First*, Defendants' submission fails to mention a critical fact: the Derivative Opinion did not at all assess the accuracy of Chemours' public disclosures, nor any alleged violations of the federal securities laws.  To the contrary, the Chancery Court only considered whether Chemours' Board of Directors faced potential liability for violating Sections 160 and 173 of the Delaware General Corporation Law ("DGCL")—namely, by authorizing dividend payments and stock repurchases between 2015-2020 when, during that period, Chemours' environmental liabilities purportedly exceeded the Company's net assets.  In rejecting these allegations and finding that no technical DGCL violations had occurred, Vice Chancellor Glasscock determined that Chemours' contingent environmental liabilities had not yet come to fruition, and thus Chemours was not technically insolvent.  In so holding, the Vice Chancellor highlighted significant inconsistencies in the plaintiffs' case that are not

---

[1] "¶_" cites are to the operative Complaint (D.I. 30).  Capitalized terms have the same meanings as in the Complaint or in the Memorandum of Law in Support of Lead Plaintiff's Opposition to Defendants' Motions to Dismiss (D.I. 37) ("Opp.").

present here, including the fact that the plaintiffs were in "the unusual position of having received what they allege was an improper distribution, while seeking to benefit from the Director Defendants repaying that distribution to the company whose stock they hold." Deriv. Op. at *1. The Chancery Court further noted that, with respect to the alleged violations of DGCL Sections 160 and 173, the derivative complaint in fact had actually "concede[d] that most of the dividend payments complied with Delaware law." Deriv. Op. at *14.

*Second*, the Chancery Court's determinations regarding the Board's purported violations of the DGCL—which turned on whether or not Chemours was *technically* insolvent—have no bearing on Plaintiff's claims in this action. Indeed, in this action, Defendants are alleged to have made a series of false and misleading statements to investors about Chemours' maximum potential exposure to all of its environmental liabilities. Specifically, each and every quarter during the Class Period, Defendants assured investors that Chemours' maximum potential exposure to these liabilities would only "range up to" certain highly specific dollar amounts, ranging from $827 million at the start of the Class Period to $763 million at the end of the Class Period.[2] Defendants did so precisely because they knew full well that it was extraordinarily

---

[2] These amounts included Chemours' accruals, which ranged from $313 million to as low as $267 million during the Class Period, and the Company's stated "remote" potential maximum liability amounts, which were $535 million at the beginning of the Class Period and were decreased down to $450 million by the end. ¶113.

2

important for investors to know what the Company's absolute maximum potential exposure could be to its environmental liabilities. Significantly, to make clear that these "range up to" amounts represented Chemours' <u>maximum potential liability</u>, Defendants represented in Chemours' SEC filings that there was only a "remote" chance, under exceedingly unlikely "adverse circumstances," of those maximums ever being reached. Opp. at 11. These statements were false. As Chemours itself admitted in its Verified Complaint, the true maximum <u>potential</u> exposure that Chemours faced from those liabilities was <u>$2.5 billion</u>—or <u>more than three times greater than Chemours had represented during the Class Period</u>. Moreover, far from being "remote," the likelihood of Chemours shouldering this liability was so great that it was forced to file its "nuclear" lawsuit seeking to enforce DuPont's liability in order to avoid insolvency. ¶135.

Indeed, Defendants' argument that they accurately disclosed Chemours' potential maximum exposure to these liabilities—and that this Court should effectively ignore the detailed liabilities set forth in the Verified Complaint—is directly belied by the reaction of investors and sophisticated financial analysts, all of whom made clear that the precise figures set forth in the Verified Complaint contradicted what the Company had told investors. Specifically, when the Verified Complaint was unsealed in June 2019, Chemours' stock price plummeted by 15%, and analysts themselves specifically emphasized that this highly material

3

information stood in stark contrast to what Defendants had told them about those potential exposures. ¶12. As analysts uniformly stated: "[w]e are lowering our price target on CC from $52 to $36 to account for <u>an upwardly revised estimate of potential legacy environmental liabilities stemming from [PFAS]</u>"; "[i]n a recent court filing, CC quantified potential high-end liabilities of approximately $2.5B," which were "<u>materially higher than expected</u>"; and that the Verified Complaint had "detail[ed] <u>materially higher potential exposures</u> under multiple lawsuits since the spin." ¶¶145-147, 150; Opp. at 11, 16.

*Third*, contrary to Defendants' assertions, Vice Chancellor Glasscock's determination that Chemours' complaint against DuPont "[sought] to enforce DuPont's putative liability for amounts that exceeded the [m]aximums DuPont certified in the [s]pin-off; it was not admitting Chemours' liability for those amounts" (Deriv. Op. at *18), does not absolve Defendants for their materially false and misleading public statements about Chemours' <u>potential</u> exposure to those same liabilities. If anything, the Derivative Opinion supports a finding of falsity and scienter in this action because it highlights a vital truth: Defendants filed the Verified Complaint "seeking to enforce DuPont's putative liability" for those precisely quantified liability amounts because they <u>knew</u> those amounts reflected the exposure <u>Chemours would be liable for</u> absent a favorable outcome in the DuPont litigation—

4

a fact that directly contradicts Defendants' public representations dramatically understating that exposure.

Similarly, the Chancery Court's determination that the liabilities Chemours quantified in the Verified Complaint did not represent "conservative estimates" of the Company's environmental liabilities, but were instead "estimates made by DuPont or demands from the claimants themselves," is also inapplicable here. D.I. 47 at 3. Vice Chancellor Glasscock reached that conclusion in the context of determining that Chemours' Board reasonably relied on the Company's GAAP-based accounting reserves in issuing dividends, in large part because the environmental liabilities quantified in the Verified Complaint were contingent and not a foregone conclusion. Deriv. Op. at *47-53. This again has no bearing on whether Defendants' public statements about Chemours' <u>potential maximum exposures</u> to these liabilities were materially false and misleading. Indeed, even if the maximum liability exposures Chemours itemized in the Verified Complaint were rightly excluded from the Board's dividend assessment, Chemours and its senior officers still had an obligation under the federal securities laws to speak truthfully to investors about those potential liabilities. Opp. at 21.

As set forth above and in Lead Plaintiff's Opposition to Defendants' Motions to Dismiss, the Court should deny Defendants' Motion in its entirety.

Dated:  November 4, 2021

Respectfully Submitted,

/s/      *Bruce E. Jameson*

Bruce E. Jameson (Bar No. 2931)
Marcus E. Montejo (Bar No. 4890)
**PRICKETT JONES & ELLIOTT, P.A**
1310 King Street
Wilmington, Delaware 19801
Telephone: (302) 888-6500
Facsimile: (302) 658-8111
bejameson@prickett.com
memontejo@prickett.com

*Liaison Counsel for the Class*

Maya Saxena
Joseph E. White III
Lester R. Hooker
Dianne M. Pitre
**SAXENA WHITE P.A.**
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com
dpitre@saxenawhite.com

Steven B. Singer
Kyla Grant
**SAXENA WHITE P.A.**
10 Bank Street
White Plains, New York 10606
Telephone: (914) 437-8551
Facsimile: (888) 216-2220
ssinger@saxenawhite.com
kgrant@saxenawhite.com

6

David R. Kaplan
**SAXENA WHITE P.A.**
12750 High Bluff Drive, Suite 475
San Diego, California 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com

*Counsel for Lead Plaintiff New York
State Teachers' Retirement System
and Lead Counsel for the Class*

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENT AND TYPE-VOLUME LIMITATION

This document complies with the type, font, and word limitations set forth in the Court's Standing Order Regarding Briefing in All Cases, as it is set in 14-point Times New Roman typeface. The document contains 1,141 words as counted by Microsoft Word, excluding the case caption and signature block

Dated:  November 4, 2021

Respectfully Submitted,

*/s/ Bruce E. Jameson*
Bruce E. Jameson (Bar No. 2931)
Marcus E. Montejo (Bar No. 4890)
**PRICKETT JONES & ELLIOTT, P.A**
1310 King Street
Wilmington, Delaware 19801
Telephone: (302) 888-6500
Facsimile: (302) 658-8111
bejameson@prickett.com
memontejo@prickett.com

*Liaison Counsel for the Class*

Maya Saxena
Joseph E. White III
Lester R. Hooker
Dianne M. Pitre
**SAXENA WHITE P.A.**
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

8

dpitre@saxenawhite.com

Steven B. Singer
Kyla Grant
**SAXENA WHITE P.A.**
10 Bank Street
White Plains, New York 10606
Telephone: (914) 437-8551
Facsimile: (888) 216-2220
ssinger@saxenawhite.com
kgrant@saxenawhite.com

David R. Kaplan
**SAXENA WHITE P.A.**
12750 High Bluff Drive, Suite 475
San Diego, California 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com

*Counsel for Lead Plaintiff New York
State Teachers' Retirement System
and Lead Counsel for the Class*

9