**PRICKETT, JONES & ELLIOTT**
A PROFESSIONAL ASSOCIATION
**1310 KING STREET, BOX 1328**
**WILMINGTON, DELAWARE 19899**
**TEL: (302) 888-6500**
**FAX: (302) 658-8111**
**http://www.prickett.com**

Writer's Direct Dial:
(302) 888-6532

Writer's E-Mail Address:
BEJameson@prickett.com

January 21, 2022

**VIA ECF**

Hon. Colm F. Connolly
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Unit 31, Room 4124
Wilmington, DE 19801

> RE:    *In re The Chemours Co. Sec. Litig.*
>         Case No.: 1:19-cv-01911-CFC

Dear Judge Connolly:

We represent Plaintiff New York State Teachers' Retirement System ("Plaintiff") in the above-referenced matter. We submit this letter in response to the Court's request during the January 14, 2022 hearing on Defendants' motion to dismiss for the parties to submit letter briefing on the issue of whether the phrase "deemed remote" constitutes "language that's routinely used in SEC filings" of public issuers when providing potential ranges of their environmental remediation liabilities. *See* January 14, 2022 Hr'g Tr. at 38:1-4; 39:4-6; 97:11-98:1.

As a preliminary matter, and as the Court is aware, under GAAP, issuers are required to disclose losses that have a "reasonably possible" chance of occurring—which are defined under GAAP to mean "more than remote"—and to provide a reasonable estimate of the loss or range of loss that may be incurred. GAAP therefore does not require issuers to disclose losses that have only a "remote" chance of occurring. *See* Pl. Opp. (ECF No. 37) at 21, 28; *see also In re Perrigo Co. PLC Sec. Litig.*, 435 F.Supp.3d 571, 582 (S.D.N.Y 2020) (stating disclosure is required under GAAP only for "reasonably possible" losses which are defined as "more than remote"). Thus, throughout the Class Period here—and as the Court recognized during the January 14, 2022 hearing (*see* January 14, 2022 Hr'g Tr. at 9:16-11:22)—Chemours voluntarily disclosed precise dollar amounts that its

Hon. Colm F. Connolly
January 21, 2022
Page 2

inherited remediation liabilities "may range up to" under "adverse changes in circumstances" that Chemours "deemed remote"—*i.e.*, the maximum remediation liability Chemours could incur under the most unlikely worst-case scenario.

Significantly, it was not until the first day of the Class Period, when Chemours filed its 2016 Form 10-K, that the Company included this highly material language stating that the maximum amount of losses that its remediation liabilities "may range up to" was "deemed remote." *See* Compl. (ECF No. 30) ¶¶52, 53; 58, 65. Notably, this was during a time when Chemours has admitted that it was privately raising objections to DuPont about the "spectacularly" understated "maximum" estimates DuPont had provided to Chemours. *Id.* ¶69. Specifically, and for ease of reference, Chemours' Class Period disclosure in this regard reads as follows (as set forth here from the Company's 2018 Form 10-K):

> Therefore, considerable uncertainty exists with respect to environmental remediation costs, and, under adverse changes in circumstances, although deemed remote, the potential liability may range up to approximately $450 million above the amount accrued at December 31, 2018.

During the January 14, 2022 hearing, the Court highlighted the peculiar nature of the "deemed remote" language in this context, and inquired as to whether Defendants' "deemed remote" disclosure constituted "routine language" widely used in SEC filings of public issuers, *i.e.*, whether public issuers similar to Chemours routinely voluntarily disclosed potential ranges of environmental losses they may incur above their accruals that have been "deemed remote."
The answer to the Court's question is a definitive no. After Plaintiff's exhaustive review of other public issuers' SEC filings, the exact opposite has proven to be true: Plaintiff has been unable to identify a single public issuer, whether a chemical company or otherwise, that routinely voluntarily disclosed potential ranges of liability that could be incurred under adverse changes in circumstances that the company "deemed remote."

Specifically, Plaintiff first conducted a thorough review of the SEC filings of numerous of Chemours' identified peer companies (as set forth in the Company's 2016-2021 Proxy Statements), in addition to other relevant chemical companies with similar PFAS liabilities (such as 3M, DuPont and DuPont-related entities). This review identified 29 similar public chemical companies in total. Significantly, not one of these entities disclosed or quantified any "remote" or

Hon. Colm F. Connolly
January 21, 2022
Page 3

"deemed remote" ranges of potential environmental remediation liabilities above the amounts accrued.  *See* Ex. A (detailing the results of this review).  To the contrary, and in accordance with GAAP requirements, all of these companies either (1) disclosed specific ranges above their accruals of "reasonably possible" losses (which, again, are specifically defined as "more than remote" under GAAP); (2) stated that their potential environmental remediation liabilities above amounts accrued were too uncertain to be estimated; or (3) warned generally of potential material remediation losses in the future without providing any quantification of any ranges of potential liability.  *See id.*

Additionally, and significantly, while DuPont-related entities facing the exact same environmental liabilities as Chemours warned of a "remote" chance of incurring liabilities beyond their disclosed "reasonably possible" maximum ranges, unlike Chemours: (i) none of these entities purported to quantify any specific maximum ranges or dollar amounts that the "remote" liabilities may "range up to"; and (ii) these entities specified that the potential "remote" liabilities, should they occur, "will have a material impact" on the company.  *Id.* at entries 9-12.

Moreover, when Plaintiff conducted a wider search for the phrase "deemed remote" across all publicly filed Form 10-Ks from 2016 through the present that were available using comprehensive AlphaSense software, Plaintiff received only 122 hits—none of which related to an issuer's disclosure of potential ranges of losses for contingent liabilities that had been "deemed remote."  To the contrary, these hits either (1) explained the well-settled maxim that "[n]either a reserve [n]or disclosure is required for losses that are deemed remote"; (2) explained that a certain liability would be removed from the company's disclosures or balance sheet because it had now been "deemed remote" by management; or (3) explained that the company's general practice was to remove or not recognize potential debts or receivables at the point they are "deemed remote."  *See* Exhibit B (showing the 122 hits across all Form 10-Ks filed from 2016 through the present for the phrase "deemed remote").

In sum, Plaintiff found no evidence whatsoever of any other large publicly traded chemical company—or any publicly traded company, for that matter—that voluntarily quantified the purported maximum amount that its worst-case "remote" liabilities could "range up to."  It is therefore highly telling that Chemours took this extraordinary and unusual step beginning on February 17, 2017, the first day of the Class Period, and a mere three days after Chemours settled the Ohio MDL for $671

Hon. Colm F. Connolly
January 21, 2022
Page 4

million.  Indeed, <u>by the Company's own admission in the Verified Complaint</u>, the Ohio MDL settlement confirmed that the purported "maximums" DuPont had provided to Chemours for the inherited liabilities were "baseless concoctions"— yet the Company continued to expressly state in its SEC filings that DuPont's purported "maximums" formed the basis of its disclosed "remote" remediation maximums to the market.  *See, e.g.*, the Company's Form 2018 10-K (stating that the range of the "deemed remote" losses was based on information obtained "through DuPont"); Compl. ¶¶75, 76.

While Plaintiff does not seek to rehash matters already covered by the Court during the January 14, 2022 hearing, Plaintiff does seek to clarify a related point concerning the falsity and scienter of these challenged statements.  As Plaintiff noted to the Court during the hearing, at this exact same time in February 2017, CW 3 (Paul Kirsch, the former President of the Fluoroproducts business at Chemours during the Class Period who reported directly to Defendant Vergnano) stated that in direct response to the Ohio MDL settlement confirming that DuPont's estimates were completely fabricated, the Company commissioned Kirsch to calculate the total actual environmental remediation costs for problematic sites Company-wide.  Compl. ¶¶129, 130.  As Kirsch stated, this comprehensive effort resulted in a staggering $2 billion estimate that Kirsch provided directly to Defendants Vergnano and Newman <u>by no later than the spring of 2018</u> (in preparation for a Board meeting that was held in August 2018).  *Id.* ¶¶130, 131.

Significantly, the $2 billion calculation that Kirsch provided to Defendants Vergnano and Newman <u>dwarfed</u> the disclosed "remote" remediation maximum of $764 million that was set forth in Chemours' 2018 First Quarter Form 10-Q (filed on May 4, 2018), and was approximately <u>three times greater</u> than the "remote" remediation maximum reported for the rest of the Class Period.[1]  *See* Compl. ¶¶212, 218, 224, 235, 243.  In fact, from the time that Chemours filed its 2018 First Quarter Form 10-Q through the end of the Class Period, Defendants' "remote" remediation maximums actually ***decreased by more than $80 million, or over 10%,*** from $764 million to the $683 million reported in the Form 10-Q filed on May 3, 2019—a mere 10 days before Chemours filed its lawsuit against DuPont seeking $4 billion to address these same liabilities.  *See* Compl. ¶¶212-13, 243-44.

---

[1] For clarity, these amounts reflect <u>the Company's environmental remediation accruals only</u> plus the Company's disclosed "deemed remote" maximum amounts in the Company's SEC filings.

Hon. Colm F. Connolly
January 21, 2022
Page 5

In light of the above, the Complaint clearly alleges that the "deemed remote" maximum liability language Chemours included in its SEC filings was extraordinarily unusual, not required by GAAP or any SEC regulation, and included specifically to reassure investors that the Company's inherited liabilities were capped at highly manageable amounts. In reality, as Defendants knew full well, the Company's liabilities dwarfed that amount.

For the reasons set forth above and in Plaintiff's opposition to Defendants' motion to dismiss, the Court should deny Defendants' motion to dismiss and allow this case to proceed.

Respectfully,

*/s/ Bruce E. Jameson*

Bruce E. Jameson (#2931)

cc:    All Counsel of Record (*via* ECF)

## CERTIFICATE OF COMPLIANCE WITH
## TYPEFACE REQUIREMENT LIMITATION

This document complies with the type, font, and word limitations set forth in the Court's Standing Order Regarding Briefing in All Cases, as it is set in 14-point Times New Roman typeface. The document contains 1,510 words as counted by Microsoft Word, excluding the case caption and signature block.

*/s/ Bruce E. Jameson*
Bruce E. Jameson (#2931)