**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE THE CHEMOURS COMPANY SECURITIES LITIGATION | C.A. NO. 1:19-CV-01911-CFC<br>Hon. Colm F. Connolly<br><br>CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | |

**MEMORANDUM OF LAW IN SUPPORT OF
LEAD PLAINTIFF'S MOTION FOR
PARTIAL RECONSIDERATION OR REARGUMENT**

**PRICKETT JONES &
ELLIOTT, P.A**

Bruce E. Jameson (Bar No. 2931)
Marcus E. Montejo (Bar No. 4890)
Samuel L. Closic (Bar No. 5468)
1310 King Street
Wilmington, Delaware 19801
Telephone: (302) 888-6500

*Liaison Counsel for the Class*

**SAXENA WHITE P.A.**

Maya S. Saxena
Joseph E. White, III
Lester R. Hooker
Dianne M. Pitre
7777 Glades Road, Suite 300
Boca Raton, Florida 33434
Telephone: (561) 394-3399

Steven B. Singer
Kyla Grant
10 Bank Street, 8th Floor
White Plains, New York 10606
Telephone: (914) 437-8551

David R. Kaplan
12750 High Bluff Drive, Suite 475
San Diego, California 92130
Telephone: (858) 997-0860

*Counsel for Lead Plaintiff New York
State Teachers' Retirement System and
Lead Counsel for the Class*

**March 10, 2022**

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL BACKGROUND.................................................................2

III.  SUMMARY OF ARGUMENT..............................................................5

IV.   ARGUMENT.........................................................................................5

   A.   Legal Standards ...........................................................................5

   B.   Defendants Admitted That The $200M Fayetteville Works
        Liability Set Forth In The Chancery Court Complaint Was
        "Remediation" .............................................................................6

   C.   The Court Overlooked Defendants' Vehement Denials,
        Credited by Analysts, In Response To The May 6, 2019
        Disclosure ...................................................................................8

V.    CONCLUSION....................................................................................10

4895-5284-2004, v. 1

# TABLE OF CITATIONS

**Page(s)**

**CASES**

*Chase Manhattan Bank v. Iridium Afr. Corp.*,
2004 WL 1588295 (D. Del. July 8, 2004) .............................................................5

*In re the Chemours Company Sec. Litig.*,
2022 WL 610671 (D. Del. Feb. 24, 2022)................................................... *passim*

*CIENA Corp. v. Corvis Corp.*,
352 F.Supp. 2d 526 (D. Del. 2005).......................................................................5

*In re Navient Corp. Sec. Litig.*,
2019 WL 7288881 (D.N.J. Dec. 30, 2019)..........................................................10

*Litwin v. Blackstone Group, L.P.*,
634 F.3d 706, (2d Cir. 2011)..................................................................................7

*Vanderhoef v. China Auto Logistics*,
2020 WL 5105243 (D.N.J. Aug. 31, 2020) ..........................................................10

*Zhengyu He v. China Zenix Auto Int'l Ltd.*,
2020 WL 3169506 (D.N.J. June 12, 2020)...........................................................10

**RULES**

D. Del. L.R. 7.1.5 .................................................................................................5

Fed. R. Civ. P. 59(e)..............................................................................................5

iii

## I.    INTRODUCTION

Lead Plaintiff brings this motion for partial reconsideration or reargument of the Court's February 24, 2022 order (ECF Nos. 57-58, the "Order") granting in part Defendants' motion to dismiss the Consolidated Class Action Complaint (ECF No. 30, the "Complaint").  In the Order, the Court dismissed the June 28, 2019 unsealing of the Chancery Court Complaint as a corrective disclosure, finding that the allegations set forth therein did not "plausibly imply that Defendants made any false representations" during the Class Period.  *In re the Chemours Company Sec. Litig.*, 2022 WL 610671, at *18 (D. Del. Feb. 24, 2022).  Plaintiff respectfully submits that this holding constituted "clear error" warranting reconsideration, as two significant facts demonstrate that the Chancery Court Complaint did in fact reveal information showing that Defendants' Class Period statements were false when made.

*First*, while the Court concluded that the Chancery Court Complaint did not reveal sufficient remediation costs to render Defendants' Class Period disclosures of "remote" remediation maximums false, the Court overlooked Defendants' unqualified admission during the January 14, 2022 hearing on their motion to dismiss that the full $200 million Fayetteville Works cost set forth in that complaint was in fact a "remediation" cost.  Indeed, it is undisputed that Chemours later accrued the entirety of this cost as "remediation."  Accordingly, when the $200 million in Fayetteville remediation costs are combined with the $620 million in

1

remediation costs attributable to New Jersey that the Court already credited in its decision, the Chancery Court Complaint in fact revealed remediation costs totaling $820 million from at least February 2019 forward.  Significantly, that $820 million materially exceeded Chemours's "remote" maximums disclosed in its SEC filings for this period of $676 and $683 million by more than 20%.

*Second*, the Court overlooked that Defendants issued vehement denials in response to the May 6, 2019 corrective disclosure revealing that Chemours faced "$4 to 6 billion" in exposure to its inherited PFAS liabilities, which the Court sustained in the Order.  In those denials, which were fully credited by analysts, Defendants vigorously disputed Chemours's PFAS exposure detailed by the May 6, 2019 corrective disclosure, claiming that its PFAS exposure was of no concern and had not caused any issues with DuPont.  The subsequent unsealing of the Chancery Court Complaint thus revealed that, contrary to Defendants' denials, Chemours's PFAS exposure was in fact "materially higher" than previously represented, necessitating the "nuclear" $4 billion lawsuit against DuPont.

Accordingly, Plaintiffs respectfully request that the Court sustain the June 28, 2019 unsealing of the Chancery Court Complaint as a corrective disclosure.

## II.    FACTUAL BACKGROUND

Plaintiff filed the Complaint on April 3, 2020.  ECF No. 30.  Defendants filed their motion to dismiss on August 24, 2020 (ECF No. 35), Plaintiff opposed on

2

November 6, 2020 (ECF No. 37), and Defendants filed their reply on December 21, 2020 (ECF No. 38). On January 14, 2022, the Court held a hearing on Defendants' motion, during which it probed which of the environmental liabilities Chemours had itemized in the Chancery Court Complaint could be fairly characterized as "remediation." Significantly, in response to this inquiry, defense counsel admitted, without qualification, that the <u>full</u> $200 million Fayetteville Works liability set forth in the Chancery Court Complaint was in fact "remediation" (ECF No. 51 at 15:2-5):

> THE COURT: Do you see any environmental remediation numbers in the Chancery Court complaint?

> MR. MOSES: <u>The Fayetteville number, the $200 million is [an] environmental remediation number</u>.

On February 24, 2022, after requesting certain additional briefing from the parties (*see* ECF Nos. 52-56), the Court issued its Order. In the Order, the Court determined that Defendants' statements in Chemours's SEC filings from Q1 2018 forward concerning the maximum amounts that Chemours's potential environmental remediation liability may "range up to" under "remote" "adverse changes in circumstances"—which, during the period the Court sustained, never exceeded $764 million (*see* ¶270)—were materially false and misleading. *Chemours*, 2022 WL 610671, at **9, 16. The Court based its holding on the Complaint's allegations regarding an internal report prepared in the spring of 2018 by Paul Kirsch, the former

3

President of Chemours's Fluoroproducts business, that tallied the Company's total remediation costs for its inherited sites Company-wide at $2 billion. *Id.* at **8-9.

In the Order, while the Court found that the Chancery Court Complaint's allegations adequately demonstrated that Chemours believed "that its maximum potential remediation liabilities for the four New Jersey sites in question were more than $620 million" from at least February 2019 forward, the Court determined that this cost alone could not render Defendants' remediation statements false since "[e]very maximum liability" disclosed during that period "exceed[ed] $620 million." *Id* at *8. Significantly, in so holding, the Court ignored that Defendants expressly admitted that the full $200 million Fayetteville Works liability was "remediation" in nature, instead holding that this amount could not be credited as remediation based on its finding that "Chemours did not allege in the Chancery Court Complaint how much of the $200 million was for remediation costs." *Id.* at *7. As set forth below, when the $200 million Fayetteville Works remediation liability is taken into account with the "more than $620 million" remediation liability for New Jersey, the liabilities itemized in the Chancery Court Complaint for these sites alone materially exceeded Defendants' total disclosed "remote" maximums by over 20%.

Based on these findings, the Court dismissed the June 28, 2019 unsealing of the Chancery Court Complaint as a corrective disclosure. *Id.* at *18. The Court therefore sustained only one corrective disclosure, the May 6, 2019 presentation by

4

Glenview Capital Management, which revealed that—contrary to Chemours's disclosed "remote" remediation maximums, which again never exceeded $764 million for the period the Court sustained—Chemours in fact "faced $4 to $6 billion in environmental liabilities," causing a 15% stock price decline. *Id.* at *17.

## III. SUMMARY OF ARGUMENT

1.     The Court committed "clear error" by overlooking significant facts showing that the June 28, 2019 unsealing of the Chancery Court Complaint was a corrective disclosure that demonstrated Defendants' prior public statements capping Chemours's "remote" remediation maximums were false when made, causing the Company's stock price to fall by 15%.

## IV. ARGUMENT

### A.     Legal Standards

Pursuant to D. Del. LR 7.1.5 and Federal Rule of Civil Procedure 59(e), the Court may grant a motion for reconsideration "if it is presented with:  (1) a change in the controlling law; (2) newly available evidence; or (3) the need to correct a clear error of law or fact to prevent manifest injustice."  *CIENA Corp. v. Corvis Corp.*, 352 F. Supp. 2d 526, 527 (D. Del. 2005); *Chase Manhattan Bank v. Iridium Afr. Corp.*, 2004 WL 1588295, at *1 (D. Del. July 8, 2004) ("[A] court should reconsider a prior decision if it overlooked facts . . . that reasonably would have altered the result.").    For the reasons set forth below, Plaintiff respectfully submits that the Court committed "clear error" warranting reconsideration here.

4895-5284-2004, v. 1

**B.    Defendants Admitted That The $200M Fayetteville Works Liability Set Forth In The Chancery Court Complaint Was "Remediation"**

While the Court determined in its February 24, 2022 opinion that the Fayetteville Works liability was not "remediation" because the Chancery Court Complaint did not specify "how much of the $200 million was for remediation costs," this was clear error. *Chemours*, 2022 WL 610671, at *7. *First*, as set forth above, during the January 14, 2022 hearing, defense counsel explicitly admitted, without qualification, that the full "Fayetteville number"—*i.e.*, "the $200 million"— was an "environmental remediation number." ECF No. 51 at 15. *Second*, as Defendants admitted in their briefing in support of their motion to dismiss, and as the Complaint also alleges (¶275), the Company in fact later accrued the entirety of the $200 million Fayetteville cost as remediation in its 2019 Form 10-K. *See* ECF No. 35 at 21; Ex. A (excerpts from Chemours's 2019 Form 10-K) at F-51-53, showing on and off-site remediation accruals for Fayetteville totaling $201 million.[1]

Based on these facts, the Court erred when it determined that the unsealing of

---

[1] While the Chancery Court Complaint described the $200 million cost as comprising "abatement technology" and "extensive remediation" (*Chemours*, 2022 WL 610671, at *7)—and while Defendants asserted (without explanation) during the January 14, 2022 hearing that "abatement" was "voluntary" and not "remediation" (*see* ECF No. 51 at 13, 61)—according to Chemours's own public filings, the two are one and the same. Indeed, Chemours's 2019 Form 10-K specifically stated that the $200 million in remediation costs accrued for Fayetteville Works included technologies designed to stop (or "abate") future emissions, such as a "thermal oxidizer" and a "groundwater treatment system." Ex. A at F-51-53.

4895-5284-2004, v. 1

the Chancery Court Complaint failed to reveal that Defendants' Class Period statements were false when made. To the contrary, when the $200 million Fayetteville remediation cost is combined with the $620 million New Jersey remediation cost the Court already credited (*see Chemours*, 2022 WL 610671, at *8), the Chancery Court Complaint revealed a total of $820 million in remediation costs for just two sites from at least February 2019 forward. However, Defendants' disclosed "remote" remediation maximums set forth in their SEC filings during this period—the 2018 Form 10-K filed on February 15, 2019, and the Q1 2019 Form 10-Q filed on May 3, 2019—were only $676 and $683 million, respectively, resulting in highly material understatements of approximately $140 million, or over 20%.[2] *See, e.g., Litwin v. Blackstone Group, L.P.*, 634 F.3d 717, (2d Cir. 2011) (citing a 5% threshold for presumptive quantitative materiality based on SEC guidance). The materiality of this $140 million understatement is further underscored by the fact that it wholly eclipsed the Company's net income during these periods of $140

---

[2] The understatement is even more pronounced when the Court considers that Chemours disclosed site-specific accruals. For example, in the 2018 Form 10-K, Chemours accrued only $63 million for New Jersey and only $10 million for Fayetteville, for a total accrual for those sites of just $73 million. Ex. B at 53. If only those site-specific accruals are considered (since the remainder of the Company's $226 million remediation accruals for that period expressly pertained to other sites)—and even assuming that the full $450 million "remote" maximum disclosed in that filing applied to only those two sites rather than all sites Company-wide (resulting in a total disclosed "maximum" exposure of $523 million)—the understatement is much higher, amounting to $297 million, or nearly 57%.

7

million and $95 million, respectively.

The fact that the Chancery Court Complaint was a corrective disclosure is further evidenced by the 15% stock decline in direct response to the complaint's unsealing. ¶145. Indeed, Defendants have cited no other confounding information that could have caused this significant stock price decline. *See* ECF No. 35 at 42-43 (citing potential confounding information for the other alleged corrective disclosures only). Moreover, analysts' contemporaneous reactions further confirm that the market understood that the Chancery Court Complaint had "quantified potential high-end liabilities" that were "materially higher than expected." ¶147.

### C. The Court Overlooked Defendants' Vehement Denials, Credited by Analysts, In Response To The May 6, 2019 Disclosure

As set forth above, the Court sustained only one corrective disclosure, the May 6, 2019 presentation revealing that Chemours faced "4 to 6 billion" in PFAS environmental liabilities. *Chemours*, 2022 WL 610671, at **17-18. However, in so doing, the Court committed clear error by overlooking the Complaint's allegations showing that immediately after that disclosure, Defendants falsely refuted those revelations to analysts, who fully credited Defendants' denials. For example, a May 15, 2019 SunTrust report stated that its "takeaways" from its meeting with Chemours's management about "the [C]ompany's exposure to PFAS" included: (i) that there was no issue with PFAS because its "[u]sage was discontinued 3 years before the spin of [Chemours]"; (ii) that there was no PFAS

8

issue at Fayetteville because the GenX there was "manufactured and recycled . . . in accordance with an EPA consent order"; and (iii) that while Chemours was pursuing litigation against DuPont, "that lawsuit is unrelated to PFAS." ¶139. Significantly, based on Defendants' staunch reassurances, SunTrust concluded that "we believe the concerns about PFAS-related liabilities are premature." *Id.*

When the Chancery Court Complaint was unsealed on June 28, 2019, investors learned that the Company's denials were completely false. That complaint revealed that: (i) Chemours's PFAS emissions at its inherited sites were in fact a highly significant issue, as they had never been remediated or abated; (ii) rather than there being no PFAS issue at Fayetteville, Chemours was in fact on the hook for $200 million in costs to remedy the PFAS emissions there; and (iii) Chemours's lawsuit against DuPont was in fact directly related to its inherited PFAS liabilities, which had forced the Company to exercise the "nuclear" option of suing its former parent for $4 billion—the same amount of exposure the May 6, 2019 report had previously calculated. As set forth above, in response to this disclosure, Chemours's stock price declined by 15%, from $24.90 per share on June 27, 2019 to close at $21.17 per share on July 2, 2019 (¶145)—and analysts' reactions directly linked the decline to the revelation that the Chancery Court Complaint had "quantified potential high-end liabilities" that were "materially higher than expected." ¶147.

Thus, even if the Chancery Court Complaint did not "precisely mirror"

9

Defendants' earlier misrepresentations quantifying the "remote" remediation maximums, it still constituted a corrective disclosure because "it did permit the market to infer"—and the market did in fact so infer—that Chemours had dramatically understated its environmental exposure, causing "the [stock] price [to] drop[] precipitously." *Zhengyu He v. China Zenix Auto Int'l Ltd.*, 2020 WL 3169506, at \*12 (D.N.J. June 12, 2020); *see also Vanderhoef v. China Auto Logistics*, 2020 WL 5105243, at \*4 (D.N.J. Aug. 31, 2020) ("A corrective disclosure only needs to relate to the same subject as the misrepresentation and there is no requirement that the disclosure mirror the earlier misrepresentation."); *In re Navient Corp. Sec. Litig.*, 2019 WL 7288881, at \*\*12-13 (D.N.J. Dec. 30, 2019) (AG lawsuit constituted a corrective disclosure despite earlier similar allegations because it "corrborat[ed] the alleged violations in previous complaints that Navient had previously affirmatively and zealously denied," causing analysts to react, and "was immediately followed by a decline in the price of Navient's stock").

For this independent reason, the June 28, 2019 unsealing of the Chancery Court Complaint should be sustained as a corrective disclosure.

## V.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant this motion in its entirety.

10

Dated:  March 10, 2022

Respectfully Submitted,

/s/      *Bruce E. Jameson*

Bruce E. Jameson (Bar No. 2931)
Marcus E. Montejo (Bar No. 4890)
Samuel L. Closic (Bar No. 5468)
**PRICKETT JONES & ELLIOTT, P.A**
1310 King Street
Wilmington, Delaware 19801
Telephone: (302) 888-6500
Facsimile: (302) 658-8111
bejameson@prickett.com
memontejo@prickett.com
slclosic@prickett.com

*Liaison Counsel for the Class*

Maya Saxena
Joseph E. White III
Lester R. Hooker
Dianne M. Pitre
**SAXENA WHITE P.A.**
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com
dpitre@saxenawhite.com

Steven B. Singer
Kyla Grant
**SAXENA WHITE P.A.**
10 Bank Street
White Plains, New York 10606
Telephone: (914) 437-8551
Facsimile: (888) 216-2220

11

4895-5284-2004, v. 1

ssinger@saxenawhite.com
kgrant@saxenawhite.com

David R. Kaplan
**SAXENA WHITE P.A.**
12750 High Bluff Drive, Suite 475
San Diego, California 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com

*Counsel for Lead Plaintiff New York
State Teachers' Retirement System
and Lead Counsel for the Class*

12

4895-5284-2004, v. 1