# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE THE CHEMOURS COMPANY SECURITIES LITIGATION | C.A. NO. 1:19-CV-01911-CFC<br>Hon. Colm F. Connolly |
| This document relates to all actions. | <u>CLASS ACTION</u> |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR <u>PARTIAL RECONSIDERATION OR REARGUMENT</u>

OF COUNSEL:

WACHTELL, LIPTON, ROSEN
    & KATZ
51 West 52nd Street
New York, NY  10019
(212) 403-1000

FRIEDLANDER & GORRIS P.A.

Joel Friedlander (Bar No. 3163)
Jeffrey Gorris (Bar No. 5012)
Christopher Foulds (Bar No. 5169)
1201 N. Market Street, Suite 2200
Wilmington, DE  19801
(302) 573-3500

*Counsel for Defendants*

Dated:  March 23, 2022

{FG-W0494419.}

## TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS.................................................................................. ii

PRELIMINARY STATEMENT...........................................................................1

ARGUMENT.................................................................................................2

    I.     The Court correctly held that Chemours included
           unquantified, non-remediation expenses in its $200
           million estimate of compliance costs from the
           Fayetteville Works consent order.......................................................3

    II.    The Court correctly rejected Plaintiff's effort to
           plead that the Chancery Court Complaint
           "revealed" the falsity of statements that are not the
           basis for any claim. ...........................................................................8

CONCLUSION ............................................................................................10

{FG-W0494419.}

## TABLE OF CITATIONS

**Page(s)**

**Cases**

*Arrowood Indem. Co.* v. *Hartford Fire Ins. Co.*,
   802 F. Supp. 2d 536 (D. Del. 2011)...................................................................... 2, 5

*Drumgo* v. *Dutton*,
   2019 WL 2076785 (D. Del. May 10, 2019)............................................................. 2

*Hurst* v. *City of Rehoboth Beach*,
   288 F. App'x 20 (3d Cir. 2008) ............................................................................ 2

*MiiCs & Partners Am., Inc.* v. *Toshiba Corp.*,
   274 F. Supp. 3d 247 (D. Del. 2017)................................................................... 8 n.3

*Schering Corp.* v. *Amgen, Inc.*,
   25 F. Supp. 2d 293 (D. Del. 1998) ....................................................................... 5

*Sec. Police & Fire Pros. of Am. Ret. v. Pfizer, Inc.*,
   2012 WL 458431 (D.N.J. Feb. 10, 2012) .............................................................. 8

*Semerenko* v. *Cendant Corp.*,
   223 F.3d 165 (3d Cir. 2000) ................................................................................ 9

*Vanderhoef* v. *China Auto Logistics*,
   2020 WL 5105243 (D.N.J. Aug. 31, 2020)............................................................ 9

**Rules**

D. Del. LR 7.1.5.............................................................................................. 1, 2

**Other Authorities**

11 C. Wright & A. Miller, Federal Practice and Procedure, § 2810.1 (3d ed.)........ 2

-ii-

## PRELIMINARY STATEMENT

Last month, the Court sharply narrowed this securities fraud action in a comprehensive opinion that drew upon 115 pages of briefing, a two-hour oral argument, and two rounds of post-argument letters. What remains are claims "regarding the contents of the Kirsch report and presentations and the alleged false representations about Chemours's maximum environmental remediation liabilities" in SEC reports filed between May 2018 and May 2019. D.I. 57 ("Opinion") at 51. And those remnants are linked to just one alleged corrective disclosure — a May 2019 short-seller presentation.

Plaintiff now requests reconsideration under Local Rule 7.1.5. Its motion does not seek to revive any of the dismissed "misrepresentations." Instead, Plaintiff accuses the Court of committing "clear error" when it held that loss causation was not pleaded through allegations about a Delaware state court complaint unsealed in June 2019 (the "Chancery Court Complaint"). The Court determined that this filing did not bear upon the falsity of the challenged statements concerning remediation liability. Plaintiff asks the Court to hold that this decision negligently "overlooked" salient facts and arguments.

The Court did not overlook anything; it carefully considered the record and properly rejected Plaintiff's position. Plaintiff is seeking not to correct any judicial error, but to relitigate the issue of loss causation, making the same arguments it made before. Reconsideration should be denied, so that the parties can turn to the only issue remaining in this case: whether Mr. Kirsch's "report and presentations" were a quantification of remediation liability.

## ARGUMENT

Reconsideration is an "extraordinary remedy which should be used sparingly." 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2810.1 (3d ed.) ("In practice, because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied."); *see also* D. Del. LR 7.1.5 ("Motions for reargument shall be sparingly granted."); *Arrowood Indem. Co.* v. *Hartford Fire Ins. Co.*, 802 F. Supp. 2d 536, 538 (D. Del. 2011) (discussing the local rule). Here, Plaintiff concedes that reconsideration is improper unless the Court concludes that it committed "clear error" in the thorough, 51-page opinion detailing the bases for partial dismissal of Plaintiff's complaint (the "Complaint"). D.I. 61 ("Mot.") at 5.

Plaintiff has not satisfied this "difficult" standard. *Drumgo* v. *Dutton*, 2019 WL 2076785, at *1 (D. Del. May 10, 2019) (Connolly, J.). Instead, its motion rehashes arguments that the Court soundly rejected. Accordingly, because "a motion for reconsideration should be used 'to correct manifest errors of law or fact or to present newly discovered evidence,' not to restate already rejected arguments," Plaintiff's motion should be denied as procedurally improper. *Hurst* v. *City of Rehoboth Beach*, 288 F. App'x 20, 26 (3d Cir. 2008); *Arrowood*, 802 F. Supp. 2d at 538 ("A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made."). However, if the Court entertains Plaintiff's arguments, it should again reject them as meritless. Plaintiff does not identify "clear error" or "manifest injustice"; instead, it attempts to rescue its pleadings by misstating the record and the law.

-2-

**I.      The Court correctly held that Chemours included unquantified, non-remediation expenses in its $200 million estimate of compliance costs from the Fayetteville Works consent order.**

Plaintiff accuses the Court of botching its interpretation of the following allegation from the Chancery Court Complaint:

> [I]n February 2019, Chemours entered into a judicially approved consent order with the State of North Carolina . . . . The consent order requires Chemours to take steps to remediate DuPont's historical contamination and to implement environmental protection measures that DuPont considered implementing years ago but decided not to pursue as too expensive . . . . [T]he cost to Chemours of implementing the consent order will be more than $200 million . . . .

D.I. 42-1 at ¶ 6. The Chancery Court Complaint further explained that the referenced "environmental protection measures" included a $60 million "investment in technology that . . . would end the discharges" at the plant. D.I. 42-1 at ¶ 81.

Throughout this litigation, Plaintiff has maintained that even though this allegation expressly distinguished between "remediat[ion]" costs and prospective "environmental protection measures," it should nevertheless be treated as an "admission" by Chemours to "over $200 million for the *remediation* of Fayetteville Works." D.I. 30 ("Compl.") at ¶ 111 (emphasis added); *see* D.I. 37 ("MTD Opp. Br.") at 29 (same); D.I. 51 ("Tr.") at 34–35. The Court rejected this reading as a "mischaracteriz[ation]." Opinion at 19. After quoting the key allegation, the Court observed "[s]ince Chemours did not allege . . . how much of the $200 million was for remediation costs, it cannot be plausibly inferred from the

-3-

Chancery Court Complaint's allegation about the Fayetteville Works consent decree that Defendants misrepresented in any SEC report its maximum potential remediation liabilities." *Id.* ("Chemours admitted only that in February 2019 . . . it entered into a consent decree that would at some point cause it to incur $200 million in costs and that some unstated portion of those costs would be allocated for remediation efforts.").[1]

According to Plaintiff, this was clear error because the Court "overlooked" two facts:  (1) an "unqualified admission" by Defendants at oral argument and (2) Chemours's later disclosure of $201 million in remediation costs for the Fayetteville Works site in its 2019 Form 10-K.  Mot. at 1, 6.  These accusations are unfounded.  At oral argument, counsel and the Court discussed the $200 million cost estimate at length.  Tr. at 56–58, 61–62.  When the Court granted partial dismissal soon after, it referenced the transcript of oral argument and specifically acknowledged Chemours's 2019 remediation accrual.  Opinion at 13 n.3 (citing hearing transcript); *id.* at 42 (noting that "[i]n [Chemours's] 2019 Form 10-K, [it]

---

[1] Remarkably, even after being called out by the Court for its mischaracterization of the Chancery Court Complaint, Plaintiff has since tried to pull the same trick with Mr. Kirsch's September 2019 testimony to the Congress.  *Compare* D.I. 63 (Plaintiff's "Submission in Response to Order Setting Rule 16(b) Conference") at 21 (claiming that Mr. Kirsch "refer[ed] to the $200 million Fayetteville liability . . . as a burdensome 'cleanup effort.'"), *with* September 10, 2019 Hearing Before Committee on Oversight and Reform, available at https://perma.cc/DBS9-HUC8, at 34 (quoting Mr. Kirsch as testifying: "[A]s I mentioned in my oral remarks, that cleanup effort *and stopping the emissions* in that facility will cost us well north of $200 million" (emphasis added)).

{FG-W0494419.}

accrued '$201 million [] for costs of the proposed Consent Order' associated with 'remediation' and 'toxicology studies'").

The Court was not negligent; it simply disagreed with Plaintiff.  Stripped of these accusations of judicial negligence, Plaintiff's motion reduces to a naked demand that the Court "rethink" its prior findings.  *Arrowood*, 802 F. Supp. 2d at 538.  But reconsideration is not a forum for "never ending polemic between litigants and the Court." *Schering Corp.* v. *Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998).  Plaintiff's motion should be denied on that basis alone.

In any event, the motion is also meritless because it rests on indefensible misquotation.  *First*, Plaintiff contends that at oral argument, Defendants made an "unqualified admission" that Chemours's $200 million cost estimate was limited to remediation expense.  Mot. at 6.  To prove out this point, Plaintiff snips a quote from a colloquy in which defense counsel sought to emphasize the accounting distinction between remediation and other cost categories, such as litigation expenses and capital expenditures.  In that narrow context, counsel noted the "Fayetteville number, the 200 million is [an] environmental remediation number." Tr. at 15.

As Plaintiff well knows, however, this was no concession.  Later at the same hearing, the Court asked whether Defendants disputed that the $200 million estimate consisted entirely of remediation expense.  Tr. at 61.  Defense counsel's response was clear and consistent with Defendants' prior briefing:  "We absolutely dispute that, Your Honor."  *Id.*; *accord* D.I. 35 ("MTD Br.") at 21; D.I. 38 ("MTD

Reply") at 4–5.  Counsel then referred the Court to this demonstrative, which plainly spelled out the correct GAAP treatment:

| | Environmental Remediation? | Source |
|---|---|---|
| Site remediation costs incurred in response to EPA orders based on the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and the Reauthorization Act of 1986 (i.e. Superfund site remediation) | Yes | ASC 410-30-05 |
| Site remediation costs incurred in response to EPA orders based on the corrective action provisions of the Resource Conservation and Recovery Act of 1976 (RCRA) | Yes | ASC 410-30-05 |
| Emissions abatement costs (e.g., Fayetteville Works emissions abatement) | No | ASC 410-30-15-3(b) |

Plaintiff cannot credibly maintain that Defendants conceded this point.

*Second*, Plaintiff contends, albeit in argument relegated to a footnote, that because Chemours's 2019 Form 10-K described abatement investments in a disclosure about the Fayetteville Works consent order, those capital expenditures were part of Chemours's $201 million accrual for future remediation at the site. Mot. at 6 n.1.  This misstates the disclosure.  Plaintiff cites a section of the annual report in which Chemours provided a consolidated account of the provisions and financial consequences of the consent order.  This included $201 million in "accrued environmental remediation liabilities," consisting largely of $46 million for "off-site replacement [of] drinking water supplies" and $132 million in long-term costs for on-site clean-up.  Chemours Annual Report (Form 10-K) (filed Feb. 14, 2020)) ("Chemours 2019 10-K") at F-52–F-53.  But it also encompassed a range of other costs associated with the consent order, including the construction of a thermal oxidizer to abate future emissions.  *Id.* at F-52.

{FG-W0494419.}

Consistent with GAAP, Chemours emphasized that these abatement investments were capital expenditures, *not* environmental remediation expenses. In describing the construction of the new thermal oxidizer, for example, Chemours specifically noted that "[e]nvironmental costs are capitalized and subsequently depreciated if the costs . . . reduce or prevent contamination from future operations." *Id*. Elsewhere in the same annual report, Chemours explained that it had boosted spending on "environmental capital projects" from $15 million in 2017 to $101 million in 2019, an increase that was "primarily attributable to new capital projects at Fayetteville." *Id.* at 50. And in a general discussion of capital expenditures, Chemours explained that it had "invested in a thermal oxidizer to reduce aerial PFAS emissions from Fayetteville." *Id.* at 45. Plaintiff's contrary and incorrect reading thus boils down to a coincidence — Chemours's $201 million remediation accrual for Fayetteville Works in its annual report, issued in February 2020, happened to be similar in amount to its May 2019 allegation that the total cost of complying with the consent order, both remediation and other elements, would exceed $200 million.[2]

Anticipating that the Court will not be fooled by its misquotation of the oral argument transcript and Chemours's 2019 Form 10-K, Plaintiff separately suggests that it should get the benefit of the doubt on loss causation because Chemours's

---

[2] As the annual report itself clarifies, the $201 million accrual reflected an increase in Chemours's prior remediation estimate. In the fourth quarter of 2019, Chemours completed a detailed proposal for the remediation to be undertaken under the consent order. Chemours 2019 10-K at 54. That evaluation revealed that Chemours would likely incur greater remediation expenses than previously understood, and so Chemours increased its remediation accrual. MTD Br. at 21.

-7-

stock price fell when the Chancery Court Complaint was unsealed. Mot. at 8. This argument is waived[3] and contrary to precedent. *Sec. Police & Fire Pros. of Am. Ret.* v. *Pfizer, Inc.*, 2012 WL 458431, at *7 n.4 (D.N.J. Feb. 10, 2012) (rejecting plaintiffs' argument that market reaction to alleged corrective disclosures can be "a factor in determining the falsity of a statement").

The Court should deny reconsideration as to the Fayetteville Works allegation.

## II.    The Court correctly rejected Plaintiff's effort to plead that the Chancery Court Complaint "revealed" the falsity of statements that are not the basis for any claim.

Plaintiff also argues that the Court's rejection of the Chancery Court Complaint as a corrective disclosure suffered from a second, independent error. A month before that filing was unsealed, a short-seller had summed up the damages sought in various lawsuits and announced that Chemours faced "$4 to [$]6 billion" in "environmental litigation liabilities" related to PFAS. Compl. at ¶¶ 137, 139. Chemours responded to this presentation — which the Court held to be a corrective disclosure — by meeting with market analysts to discuss its exposure to PFAS liability. *Id.* at ¶ 139. The Complaint alleges that Chemours "sought to reassure the market regarding [its] environmental litigation liabilities" at these meetings, *id.*, only for that reassurance to be revealed as false by the Chancery Court Complaint.

---

[3] Plaintiff first raised the point in its response to Defendants' Notice of Subsequent Authority. D.I. 48 at 3–4; *MiiCs & Partners Am., Inc.* v. *Toshiba Corp.*, 274 F. Supp. 3d 247, 252 (D. Del. 2017), *aff'd*, 748 F. App'x 1026 (Fed. Cir. 2019) (argument waived where raised for the first time in response to a notice of subsequent authority).

-8-

*Id.* at ¶ 140.  According to Plaintiff, the Court erred by "overlooking" those allegations, which should have been sufficient to establish loss causation because "there is no requirement that [a corrective] disclosure mirror the earlier misrepresentations."  Mot. at 10 (citing *Vanderhoef* v. *China Auto Logistics*, 2020 WL 5105243, at *4 (D.N.J. Aug. 31, 2020)).

This argument fails for several reasons.  To begin, Plaintiff cited the same authority to make the same argument in opposing dismissal.  MTD Opp. Br. at 49–50 (citing *Vanderhoef*, 2020 WL 5105243, at *4).  Once again, Plaintiff insists that it deserves a second bite at the apple because the Court failed to consider its argument.  But the Court directly addressed portions of the Complaint reciting the contention.  Opinion at 7–8 (quoting Compl. at ¶¶ 11-13).  Nothing was overlooked.

In any event, Plaintiff's argument misses the point.  Plaintiff chose not to include Defendants' May 2019 statements to analysts among the scores pleaded as fraudulent in the Complaint.  *See* Compl. at ¶¶ 164-284.  The Chancery Court Complaint cannot serve as a corrective disclosure for statements that Plaintiff has not even alleged — and could not allege — as a basis for a claim under Section 10(b).  *See Semerenko* v. *Cendant Corp.*, 223 F.3d 165, 185 (3d Cir. 2000) (to plead loss causation, a plaintiff must "establish that the *alleged misrepresentations* proximately caused the decline in the security's value" (emphasis added)).

Moreover, as the Court correctly held, the Chancery Court Complaint's public disclosure "could not establish that Plaintiff suffered losses caused by Defendants' alleged false representations" because it "do[es] not plausibly imply

-9-

that Defendants made any false representations." Opinion at 49. This mismatch between disclosure and correction is particularly pronounced now that the Court has narrowed the action to Defendants' alleged misrepresentations about environmental *remediation* liability. The Complaint concedes that Chemours's May 2019 statements were directed to its "environmental *litigation* liabilities." Compl. at ¶ 139 (emphasis added). It is thus doubly irrelevant whether those statements were "corrected." The Court could not have erred by declining to endorse Plaintiff's theory.

## CONCLUSION

For the reasons stated above, the Court should deny reconsideration.

DATED:  March 23, 2022

OF COUNSEL:

WACHTELL, LIPTON, ROSEN
        & KATZ
51 West 52nd Street
New York, NY  10019
(212) 403-1000

Respectfully submitted,

FRIEDLANDER & GORRIS P.A.

/s/  Christopher M. Foulds
Joel Friedlander (Bar No. 3163)
Jeffrey Gorris (Bar No. 5012)
Christopher Foulds (Bar No. 5169)
1201 N. Market Street, Suite 2200
Wilmington, DE  19801
(302) 573-3500

*Counsel for Defendants*

-10-