# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE THE CHEMOURS COMPANY SECURITIES LITIGATION | C.A. NO. 1:19-CV-01911-CFC<br>Hon. Colm F. Connolly |
| This document relates to all actions. | <u>CLASS ACTION</u> |

## SURREPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR <u>PARTIAL RECONSIDERATION OR REARGUMENT</u>

OF COUNSEL:

WACHTELL, LIPTON, ROSEN
    & KATZ
51 West 52nd Street
New York, NY  10019
(212) 403-1000

FRIEDLANDER & GORRIS P.A.

Joel Friedlander (Bar No. 3163)
Jeffrey Gorris (Bar No. 5012)
Christopher Foulds (Bar No. 5169)
1201 N. Market Street, Suite 2200
Wilmington, DE  19801
(302) 573-3500

*Counsel for Defendants*

DATED: April 6, 2022

{FG-W0494789.}

There they go again.  Plaintiff's latest brief continues its campaign of mischaracterization, misquoting accounting guidance, Chemours's disclosures, and even Plaintiff's own allegations.  These "facts" cannot support reconsideration, because Plaintiff did not present them in opposition to dismissal.  Nor do they undermine the Court's dismissal order.  The Court should deny Plaintiff's motion.

## ARGUMENT

Plaintiff's reply abandons any pretense of identifying a "manifest error[] of law or fact" that would justify reconsideration.  *Hurst* v. *City of Rehoboth Beach*, 288 F. App'x 20, 26 (3d Cir. 2008).  Instead, Plaintiff begins with a familiar distortion, claiming Defendants "admi[tted]" that the Delaware Chancery Complaint estimated $200 million in future environmental remediation expenses at Chemours's Fayetteville Works plant.  D.I. 66 ("Reply") at 1.  Defendants made no such admission.  To the contrary, Defendants have consistently emphasized that under the plain language of the Delaware filing, the $200 million estimate reflected an aggregate of (i) remediation expenses and (ii) "environmental protection measures" that would "end the discharges" at the plant.  D.I. 42-1 at ¶¶ 6, 81; D.I. 65 at 5–6.  This included the $60 million cost of building a thermal oxidizer to reduce future emissions.  *Id.*  The Court has twice acknowledged Defendants' position on this point.  D.I. 51 at 61; Decl. of Joel Friedlander, Ex. 1 (Transcript of Mar. 24, 2022 Conference) at 9.  Nothing was overlooked.

Plaintiff cannot acknowledge this point because it shows that reconsideration is inappropriate.  And so Plaintiff devotes much of its reply to the counterfactual

claim that GAAP *required* Chemours to classify pollution-control measures like the Fayetteville thermal oxidizer as "remediation" costs. Plaintiff never pursued this argument in opposing dismissal. As such, it cannot support reconsideration. The Court's analysis should end there.

In any event, Plaintiff misstates GAAP. As Defendants explained in their motion to dismiss, the definition of "environmental remediation" categorically excludes "[p]ollution control costs with respect to current operations or on accounting for costs of future site restoration or closure that are required upon the cessation of operations or sale of facilities . . . ." ASC 410-30-15-3(b). This exclusion is dispositive. It is undisputed that the thermal oxidizer at Fayetteville was constructed to control pollution "with respect to current operations" — it was "designed to reduce aerial PFAS emissions" from ongoing production at the plant. Annual Report (Form 10-K) (filed Feb. 14, 2020) ("2019 Form 10-K") at 34.

Because Plaintiff cannot square its claims with this exclusion, it instead resorts to clumsy misquotation. Plaintiff's reply quotes ASC 410-30-15-3(b), but *deletes the words* "with respect to current operations." Reply at 1–2. After omitting the key language, Plaintiff argues that "[s]uch costs are clearly not at issue here, as there indisputably was no 'cessation of operations or sale' of Fayetteville Works." *Id*. at 2. The actual text of the exclusion is not conditioned on "cessation of operations or sale." This sleight of hand marks a new low in Plaintiff's candor to the Court.

Building on that misquotation, Plaintiff next tortures the accounting guidance on the federal "Superfund" law. Reply at 2 (quoting 42 U.S.C.

-2-

§ 9601(24)).  The premise of this argument appears to be that the Superfund statute requires companies to abate pollution from ongoing operations.  Plaintiff offers no support for this gloss, which defies common understanding.  As the sources quoted by Plaintiff make clear, the statute and related accounting guidance are — not surprisingly — directed to the containment of *existing* pollution, not the prevention of *new* emissions.  *See* 42 U.S.C. § 9601(24) ("prevent or minimize the release of hazardous substances *so that they do not migrate*"); ASC 410-30-20, Remedial Action ("alleviate [] or eliminate a threat of the release of an *existing* hazardous substance").  Pollution-control measures like the Fayetteville thermal oxidizer do not block the "migrat[ion]" of "existing" hazardous substances; they reduce emissions from current operations.

Unsurprisingly, Plaintiff struggles to import its misstatement of GAAP into Chemours's disclosures.  Once again, the focus of this discussion is an effort to establish that Chemours's 2019 annual report "admitted" that a $201 million accrual for Fayetteville remediation included the construction cost of the thermal oxidizer.  This claim cannot be reconciled with the actual language of the report.  Most problematic for Plaintiff, the thermal oxidizer was *completed and became fully operational in December 2019*.  2019 Form 10-K at F-52 ("A thermal oxidizer [] became fully operational at [Fayetteville] on December 27, 2019.").  As such, the cost of its construction could not possibly have been included in an accrual for *future* expenses.  The balance of the annual report only reinforces this reality.  Chemours disclosed that the $201 million accrual "represent[ed] on-site remediation, off-site groundwater remediation, and toxicology studies related to

-3-

Fayetteville." *Id.* at 50.  This included $181 million in anticipated "long term" costs, of which $46 million was allocated to the replacement of contaminated drinking water and $132 million to the remediation of on-site groundwater.  *Id.* at F-52–F-53.  There is no room in these figures for an already-finished, $60 million thermal oxidizer.[1]

In an effort to avoid these disclosures, Plaintiff misleadingly cites a sentence from a section of Chemours's 2019 annual report titled "Environmental Expenditures," in which Chemours discussed both abatement and remediation expenses.  Reply at 3.  That section was followed by two separate subsections titled "Environmental Capital Expenditures" and "Environmental Remediation," making clear that the Environmental Expenditures section provided a general description of environmental costs that was then followed by more specific discussion of different categories of such costs.  2019 Form 10-K at 50–51.

That leaves Plaintiff's attempt to refigure Defendants' May 2019 statements to analysts into securities fraud.  Reply at 5–6.  This time, Plaintiff turns its powers of "creative" interpretation on the Complaint itself, by simply ignoring the allegation that these statements were directed to "environmental *litigation*

---

[1] Similarly, Chemours disclosed that $155 million of the $201 million accrual stemmed from the "investigation" phase of remediation, with the balance being the $46 million for water replacement.  2019 Form 10-K at 52.  Again, the thermal oxidizer is nowhere to be found.  Plaintiff nevertheless suggests that because GAAP allows companies to capitalize certain expenses that would otherwise be considered remediation costs, the thermal oxidizer must be a remediation cost.  Reply at 4.  This logical fallacy ignores the fact that pollution-control costs are excluded from the definition of remediation.

liabilities."  D.I. 30 at ¶ 139 (emphasis added) (alleging that "Defendants strongly disputed Robbins' conclusions and sought to reassure the market regarding Chemours'[s] environmental litigation liabilities").  In any event, the point is moot because Plaintiff still cannot find any fault in the Court's holding that "the allegations in the Chancery Court Complaint do not plausibly imply that Defendants made any false representations."  D.I. 57 at 49.  The Chancery Court Complaint cannot have been a corrective disclosure if it did not reveal any false representations, and thus Defendants' statements in the month preceding its unsealing are irrelevant.

## **CONCLUSION**

For the reasons stated above and in Defendants' prior brief opposing reconsideration, the Court should deny Plaintiff's motion.

DATED:  April 6, 2022

OF COUNSEL:

WACHTELL, LIPTON, ROSEN
     & KATZ
51 West 52nd Street
New York, NY  10019
(212) 403-1000

Respectfully submitted,

FRIEDLANDER & GORRIS P.A.

*/s/  Joel Friedlander*
Joel Friedlander (Bar No. 3163)
Jeffrey Gorris (Bar No. 5012)
Christopher Foulds (Bar No. 5169)
1201 N. Market Street, Suite 2200
Wilmington, DE  19801
(302) 573-3500

*Counsel for Defendants*

{FG-W0494789.}