# Exhibit 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE THE CHEMOURS COMPANY
SECURITIES LITIGATION
                    C.A. No. 1:19-CV-01911-CFC

Thursday, March 24, 2022

Status Conference

11:00 a.m.

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE COLM F. CONNOLLY
United States District Court Judge

APPEARANCES:

        PRICKETT, JONES & ELLIOTT, P.A.
        BY:  BRUCE E. JAMESON, ESQ.

                -and-

        SAXENA WHITE
        BY:  KYLA GRANT, ESQ.
        BY:  LESTOR R. HOOKER

                Counsel for the Plaintiff

APPEARANCES CONTINUED:

        FRIEDLANDER & GORRIS P.A.
        BY:  JOEL FRIEDLANDER, ESQ.

                -and-

        WACHTELL, LIPTON, ROSEN & KATZ
        BY:  JONATHAN M. MOSES, ESQ.
        BY:  NOAH B. YAVITZ, ESQ.
        BY:  JUSTIN BROOKE, ESQ.

                Counsel for the Defendants

        - - - - - - - - - -

P R O C E E D I N G S

(The proceedings commenced in Courtroom 4B at 11:00 a.m.)

THE COURT:  Good morning.

MR. JAMESON:  Good morning, Your Honor.  Bruce Jameson of Prickett Jones for the plaintiff.

By way of introduction, with me at counsel table is Kyla Grant and Lester Hooker, both of the Saxena White firm.  Ms. Grant will make the presentation this morning.

THE COURT:  All right.  Thank you.  Mr. Friedlander.

MR. FRIEDLANDER:  Good morning, Your Honor, Joel Friedlander from Friedlander & Gorris.

I'm joined at counsel table by my colleagues from Wachtell Lipton, Jonathan Moses, Noah Yavitz and Justin Brooks.  Mr. Moses will be speaking.

THE COURT:  Thank you very much.  All right.  So have you filed a response to the motion for reconsideration?

MR. MOSES:  We did last night.  I have two copies, if you want me to hand them up.

THE COURT:  Don't let them go to waste.  Sure.

MR. MOSES:  We filed, I think, around five last night.

THE COURT:  Okay.  Thank you.

All right.  So let's see.  I mean, I've read the papers, but not with the care that I normally would because I thought we were going to meet anyway, and, frankly, I'm not exactly sure what the defendants want.

So what do you think we should do?

MR. MOSES:  I think we should go straight to Mr. Kirsch's deposition.  I think you have the power to do that.

THE COURT:  I'm inclined to do that.  What do you want to do?  You are going to file a motion to strike?  You're going to file for summary judgment?  What do you think is the next step?

MR. MOSES:  Your Honor, I think one of three things can happen.

One, based on the -- we'll give them the presentations.  They will take the deposition.

THE COURT:  That's one thing I was going to ask right away.  You are going to give them the presentation.

MR. MOSES:  We will, Your Honor.

THE COURT:  Have you interviewed Mr. Kirsch?

MS. GRANT:  I'm sorry?  What was that, Your Honor?

THE COURT:  Have you interviewed Mr. Kirsch?

MS. GRANT: Our investigators have, yes.

THE COURT: Do you want discovery of that? What do you think?

MR. MOSES: Your Honor, I don't need discovery of that. What matters is the contents of presentations here. That's our --

THE COURT: What I'm wondering if that's true, right, because they've got quotations attributing statements to Mr. Kirsch, and, you know, I'm wondering if it should be so limited.

I understand that would be work product, all sorts of issues that can follow.

Isn't the issue whether they had a good faith basis to bring the complaint, and what did Mr. Kirsch tell them?

I mean, for instance, the reason why we are going forward, I didn't grant the motion to dismiss, right. It could be that Mr. Kirsch is not being fully candid in the affidavit you've submitted, right. He may have told their investigator something that contradicts it, and they could prove that. I mean, ultimately, don't I have to get my arms around that?

MR. MOSES: Your Honor, I think for the purposes of deciding what to do with this case, we need to know did that presentation concern GAAP, remediation

liabilities or as we believe absolutely true, this kind of forward-looking abatement going green project that Chemours publicly disclosed, which is not remediation.

If it is the latter, under your ruling, the case needs to go away, whether by dismissal or summary judgment. I can address that in a second.

For the Rule 11 analysis, I think, which is mandatory under the PSR --

THE COURT: I read Judge Posner's decision.

MR. MOSES: -- in Livonia. We need to look at that. For that purpose, it may very well be relevant.

That gets to what I think are the three offramps here or one would not be an offramp. One is they get the presentations. They get an opportunity under oath to question Mr. Kirsch. We do the same. Mr. Kirsch, by the way, is a lawyer.

THE COURT: I won't hold that against him.

MR. MOSES: And then, maybe they, for the better part of veiler, say, you know something, we are going to strike the allegations, take our dismissal. Maybe they appeal. Maybe they don't appeal because they recognize there is mandatory Rule 11 under the PSLRA. That has happened in these cases. In Livonia that essentially happened, and that's one offramp.

The other offramp is we come to you. I was

thinking we would file a 12(f), 12(c) Rule 56 motion. I think either path works. You could strike the allegations, and under 12(c) and dismiss it or under Rule 56, you can dismiss it as well. You can bring a Rule 56 motion at any time.

There's no requirement that we answer. We probably would do it that way or maybe Your Honor will conclude they will persuade you there's still an issue here. I don't think that will be the case. Maybe that will happen.

THE COURT: Like I said, I think remember reading in the context when I was writing the opinions, you know the 9th Circuit dealt with one of these recanting affidavits. I think it rightly pointed out that maybe the affidavit is not true. So it could be, very well could be.

MR. MOSES: What I think is interesting here, why Campo was apt; although, it's not in the same procedural place at Campo. We are past the 12(b)(6) motion.

What matters here is: What did this report purport to tally? In their allegations, they say Paragraph 127, He gave Confidential Witness 3, Mr. Kirsch, gave an exhaustive presentation showing remediation.

Paragraph 129, It was a detailed report of

current environmental remediation liabilities.

And that's what Your Honor held, you know, in Page 24 of your report, you said, look, I understand defendants are saying, look, this is not remediation, but this is just as compelling an inference and concerns GAAP style remediation. So I can't dismiss it at that point.

There is an answer to it. It's the presentations and, frankly, probably the presentations would be enough, but Mr. Kirsch's questioning about the presentations.

And that's why Campo is apt because in Campo the question was, What did that real estate database say? Did it have the valuations necessary to value the real estate of Sears or not?

And so in some sense, this is not like some of the credibility cases that they cite, where it's really this, Who shot John? Did they tell the investigator this or did they not tell the investigator this?

We've got a report. Let's look at it. It is not GAAP style remediation, but, you know, they want to test that. Your Honor has given them the opportunity to test that. There's really nothing else we think we should do at this point.

If we for -- somehow they show that there's still an issue, we can talk about next steps. I think it

is totally within your power, and the rules encourage you to approach cases in this way. So that's what we think should happen here, Your Honor.

THE COURT: Before you go, so I didn't read your response, but I did remember the oral argument. I remember being surprised at your answer. You didn't bring it at oral argument. That was a mistake, when you said the 200, that was a mistake?

MR. MOSES: Your Honor, I think we were just talking in the context of remediation buckets versus the litigation buckets.

Later in the argument, and I have my new partner, Mr. Yavitz here to defend me, if necessary.

THE COURT: Well, no. I remember because I came into the argument thinking it was not.

MR. MOSES: It was a mistake.

THE COURT: It was a mistake and clarified at the end of the argument.

MR. MOSES: Clarified at the end, made it clear this was not all remediation liability, and it is not all remediation liability.

Your Honor, I guess that's what we want to do.

THE COURT: Let me hear from the other side.

MR. MOSES: You will hear from plaintiff.

THE COURT: We have a new plaintiff lawyer.

MS. GRANT: Good morning, Your Honor. May it please the Court, my name is Kyla Grant on behalf of the plaintiff.

We absolutely oppose a stay at this juncture. We don't think -- defendants have now, in fact, conceded Campo does not provide the Court with that authority. Campo dealt with a motion to dismiss situation.

THE COURT: Well, wait. You don't dispute I have the authority to do this, do you?

MS. GRANT: Well, Your honor, we think for a Rule 56 motion, a Court would need a full and complete record. A deposition of a single witness --

THE COURT: I'm not onto the Rule 56. I don't think your friend on the other side was insisting on Rule 56.

I mean, the practical question for me is going to Rule 1, speedy, efficient, just resolution of cases. Your case is going forward solely based on allegations that you made about things that Mr. Kirsch purportedly said. Now, I understand he apparently said that to your private investigator.

Since that's the sole basis that the case is going forward, it seems to me it's just and efficient to, right away, let's have him deposed.

MS. GRANT: Your Honor, there's no Court that

we've found and no precedent that defendants have cited in which a Court has ever stayed a case after ruling on motion to dismiss in order to depose a single witness.

THE COURT: Well, suppose I don't stay it then. Suppose I just say, fine, the only thing that will take place next in the case is discovery in the form of a deposition of Mr. Kirsch.

Are you saying I don't have the authority to do that?

MS. GRANT: It's not that you don't have the authority, Your Honor. We don't think that's advisable at this stage.

Mr. Kirsch recanting the declaration raises a lot of fact issues, including regarding his credibility. That single presentation, that I assume they are referencing the presentation that was made to the board August 2018, if Your Honor reviews our allegations, we mention that presentation only in passing.

Our allegations are really about Mr. Kirsch's months' long analysis of these underlying liabilities, which he said were prompted by the Ohio MDL settling for 671 million.

Once that happens, Chemours understood that the liabilities it had inherited were much, much worse that what DuPont had represented. Because of that --

THE COURT: Hold on one second. Can you repeat what you just said please.

MS. GRANT: Your Honor, our allegations, the presentation to the board is that's made in passing. Yes, we do mention that, August 2018.

Our allegations are really about analysis he undertook that were prompted by the Ohio MDL, according to Mr. Kirsch, he did not recant that.

THE COURT: Hold up, hold up. I am looking at the amended complaint. Do you have a copy of it?

MS. GRANT: I do.

THE COURT: Focus, if you would please, on Pages 66 through 70. This section is captioned, "The former president of Fluoroproducts at Chemours gave a presentation to the individual defendants and the board showing remediation would cost $2 billion."

MS. GRANT: Yes, Your Honor.

THE COURT: That allegation that remediation would cost $2 billion was really the centerpiece of my ruling not to dismiss; would you agree?

MS. GRANT: I would agree, yes.

THE COURT: And then when I look at Paragraphs 127 to 135, can you show me any reference to the Ohio matter you just discussed?

MS. GRANT: Yes, Your Honor. It would be

13

Paragraph 129.

THE COURT: Okay.

MS. GRANT: It states: CW3 stated that when the 671 million settlement with the Ohio MDL occurred, the company had a moment of enlightenment and realized that by doing bare minimum that it exposed itself to significant liabilities. As a result of CW3 conducted an exhaustive evaluation total environment remediation costs, not taking into account litigation that would be required to clean up problematic sites company-wide.

THE COURT: Right.

MS. GRANT: This review culminated in the report was ultimately underlying the presentation that was presented to the board, and also before to the board prior --

THE COURT: Is there any other reference to the Ohio MDL?

MS. GRANT: Well, Your Honor, there are other allegations regarding the Ohio MDL.

THE COURT: In this section?

MS. GRANT: Not in this particular section.

THE COURT: Right. This section is replete with references to this $2 billion, right, and you have quotes here "plug all the holes."

MS. GRANT: Yes, Your Honor.

14

THE COURT: Is that something said to your investigator?

MS. GRANT: Yes, Your Honor. Defendants have repeated that quote. Mr. Kirsch has not recanted that quote in his declaration.

THE COURT: No, I agree, but that quote is totally consistent with what the defendants say this effort by Mr. Kirsch was all about.

MS. GRANT: Your Honor --

THE COURT: Let's do this: You agree I have the authority to do it. I'm going to do it.

Whether it's a stay or whether we manage this case, such that as a threshold matter, we have Mr. Kirsch deposed. I think that's the right way to handle this case.

I do not think that you should be able to, based solely on the Kirsch alleged statements, have the case not be dismissed and then require the defendants to engage in fulsome discovery. That's not fair.

The whole notion behind the PSLRA was to avoid that situation, and so we're going to do it.

You agree I have the authority. There's no question in my mind I have the authority to do it.

We need to figure out how to get it done, all right. Do you have any proposals?

15

MS. GRANT: Your Honor, one proposal would be that discovery not be limited solely to the presentation given to the board. At the very least, we should be entitled to see what was presented to defendants, Vergnano and Newman. The analyses underlying that report doesn't have to be fulsome, expensive discovery. I think we should get at least even Mr. Kirsch's internal communications with Vergnano.

THE COURT: I'm not going to do that either. I am going to require the production of the report, and then we will have a deposition, and you can lay whatever you need to lay in terms of foundation to make further applications to the Court.

If you could justify, through that questioning, a need for more discovery, I will certainly entertain it. As a threshold matter, I think that's what we need to do.

MS. GRANT: Your Honor, I would also like to respond to the point of abatement versus remediation. There are a few points, if you would give me a few minutes that I can make in response.

THE COURT: When you say "the point," you are talking about with respect to the motion for reconsideration?

MS. GRANT: Well, I think it comes up with respect to Kirsch's report as well. They are stating that

16

abatement is something different, and that his report was all about voluntary abatement so...

THE COURT: I am assuming you can probe that in the deposition.

MS. GRANT: We can probe that. I also wanted to cite the accounting guidance that they cite, which doesn't say what they say it says.

Abatement is most certainly part of the remediation. I can also point to several definitions of remediation from the Federal statute separation agreement between DuPont and Chemours that makes clear that abatement measures were included within remediation.

So at the very least, perhaps, we can have an opportunity to respond and reply to their abatement argument. I can do it now.

THE COURT: Sure, you can do it now. You can also file. I'm not going to need a reply, I don't think.

If you are asking for permission to reply to their response, which I haven't even read yet --

MS. GRANT: Well, they make it all about this abatement issue. This abatement issue has come up multiple times.

THE COURT: In fairness, I asked about the abatement issue. The reason why I asked was because I remember being surprised by the response, but it was also,

and I was really just curious what they were going to say because I remembered it.

I remembered it also, and I went back and looked at the transcript, and consistent with my memory, I remember clarification was brought to the issue later in the oral argument, and you were seizing on it in your papers.

I thought if you had a leg to stand on, with your motion, it was going to be on that point, and so that's why I went back and looked at the transcript, and, frankly, just out of curiosity, wondered how they were going to respond, but you can make whatever points you want.

I haven't made a decision on a motion for reconsideration. I will certainly look at it.

MS. GRANT: I will be as brief as possible.

THE COURT: In fairness to them, they didn't mention it. I was the one who raised the question.

MS. GRANT: I understand, Your Honor. I will make a few quick points just about remediation versus abatement.

First, defendants cite accounting guidance for this. The accounting guidance is ASC 410-30 which deals with remediation costs. That accounting guidance, the particular provision they cite is 15.3(b). 15.3(b)

doesn't say anything about abatement. The word abatement is not used, does not categorically exclude abatement.

What it states -- I will read from it -- is that: Excluded from this section, which governs remediation costs, are pollution control costs, with respect to current operations on an accounting for cost future site restoration or closure that are required upon the cessation of operations or sale of facilities.

So it applies to pollution control costs within that context that are required upon the cessation of operations for the sale of facilities.

This provision does include a definition of remediation costs. That's 523. So 40-1030, 523 which says, Costs to a potentially responsible party may include cleanup costs, which include containment, removal and remedial action.

Removal action is defined to mean the cleanup or removal of hazardous substances, actions in response to the threat of release and actions that may be necessary to monitor, assess, prevent, minimize or mitigate damage to the environment.

Remedial action, which was also listed in that definition is defined as long-term actions taken to alleviate or eliminate the effects of a release of a hazardous substance into the environment or to alleviate

or eliminate the threat of the release of the existing hazardous substance into the environment.

CERCLA defines remediation, remedial action to mean actions, removal actions taken in the event of a release or threat of release of a hazardous substance into the environment to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present -- that present future public health or welfare or the environment.

The separation agreement between DuPont and Chemours defines remediation to include preventing the release of hazardous substances, including by way of vapor intrusion, so they do not migrate, endanger or threaten to endangering public health or welfare for the indoor or outdoor environment.

And also defendant's 10-K under environmental expenditures say we incur costs for pollution abatement activities --

THE COURT: Which 10-K is that?

MS. GRANT: This is the 2019 10-K, Page 50.

We incur costs for pollution, abatement activity, including waste collection and disposal, installation and maintenance of air pollution controls and wastewater treatment emissions testing and monitoring and obtaining permits.

In this section it says the charges described in this section include 201 million for costs associated in connection with proposed consent order, Fayetteville, North Carolina.

The actual Fayetteville remediation expenses, which are described on F51, F52, F53, describe all of these measures, including the thermal oxidizer, that defendants describe in their response, which I know you haven't yet read.

There is another point that I wanted to make about this, which is that capital projects, defendants say, are included in remediation costs. And that is on Page 51.

It says, our environmental liabilities include estimated costs including certain accruable costs associated with on-site capital projects.

And that same accounting guidance, ASC-410, states that remediation cost do include capital expenditures that can be capitalized when they extend the life, increase the capacity or improve the safety or efficiency of the property.

We would argue that all these definitions make clear that abatement is most certainly included within remediation. There is nothing defendants can point to saying that abatement is not part of the remediation.

**THE COURT:** Did you use the word "abatement" in the complaint?

**MS. GRANT:** Your Honor, I don't believe we did use "abatement" in the complaint, but abatement, as I understand it to mean, as defendants have described in their own papers, is stopping emissions, stopping emissions from entering the environment.

**THE COURT:** All right. And all this goes to the motion for reconsideration?

**MS. GRANT:** Not just that, Your Honor. They -- one of the arguments they've made is that this evaluation that Mr. Kirsch performed, the reason why it's not relevant here, is that it dealt with abatement and not remediation.

We're saying those two things are one in the same. Even if you are talking about capital projects, their own accounting guidance that they so heavily rely upon states that actually capital projects are encompassed within remediation costs. That's not something that's categorically excluded or mutually exclusive. The two are not mutually exclusive.

I would also note that they say this corporate responsibility program was wholly voluntary. When you review publicly disclosed reports, the corporate responsibility commitment reports they disclosed every year, every year they highlight Fayetteville as a case study.

Whether it is abatement, whether it's remediation, the reason they incurred these costs at Fayetteville was because of the consent order. That's not voluntary, yet it's highlighted in this program over and over again, suggesting that this program isn't just about some voluntary program to better the environment. They are actually folding into it actual obligations that they are under because of government authorities coming to them with remediation obligations.

**THE COURT:** Okay.

**MS. GRANT:** That's all I have on that, Your Honor. We can explore all of this in a deposition with Mr. Kirsch.

**THE COURT:** I would think you would want to.

**MS. GRANT:** We will, Your Honor.

We just, you know, plaintiffs would like discovery beyond the presentation as I said. We think there are issues here.

We also think its Mr. Kirsch's credibility. He testified before Congress. Two weeks later, he resigns from the company. A few months later, he voluntarily meets with us on two occasions, one of them in person.

**THE COURT:** Sorry. I lost the connection. He

testified in Congress, and then two weeks later, he resigned, and that affects his credibility. You have to explain that to me.

**MS. GRANT:** Your Honor, just by taking inconsistent positions. He testifies on behalf of the company as their spokesperson before Congress about the PFAS liabilities, about the inherited environmental liabilities.

He testifies before Congress. Only a few weeks later, he resigns from the company. Couple of months later, he voluntarily meets with us, knowing exactly what this case about, on two septate occasions. One occasion was in person. A few months later, he files a recanting declaration on behalf of defendants.

So it's shifting positions for Mr. Kirsch that we would say calls into question his credibility, which we would say is a question for the jury.

**THE COURT:** Okay.

**MS. GRANT:** That's all I have, Your Honor.

**THE COURT:** All right. I would recommend you take a look at Paragraphs 93, 94, 100, 184, 185, 186 of your complaint. I think you used the word "abatement" for what it's worth.

**MS. GRANT:** Thank you for clarification, Your Honor.

**THE COURT:** All right. How are we going to set this up? Let's have a proposal how to move forward.

**MR. MOSES:** Your Honor, what I would propose is we'll talk with our friends here about giving them the presentations.

There were two that were referenced, one to the executive committee and one to the board. We will give them to both, one to Vergnano and Newman, one to the board.

We will want to have some sort of appropriate protective order, and then we will give them the name of Mr. Kirsch's counsel, and we will work out a date for his deposition. And then we can kind of see where we are at that point.

I really do hope that they'll consider whether or not they want, on their own volition, strike these allegations given the mandatory --

**THE COURT:** I do want to impress upon you, I have not formed a judgment.

**MR. MOSES:** I understand, Your Honor.

**THE COURT:** It took me a long time to get through the complaint and the motions, and I've talked about because of the heavy caseload we have here, but, you know, we're making progress on that. We'll try to get to this efficiently --

25

**MR. MOSES:** We appreciate it, Your Honor.

**THE COURT:** -- in a time sensitive way, especially since we're going to proceed this way. I will try to address whatever comes before me, but I haven't prejudged this. By "this," I mean the case, and I have no opinions about Mr. Kirsch's credibility. I don't think I need to at this point.

I think that Civil Rule 1 would be best served by proceeding, initially, with Mr. Kirsch's deposition, and then we can see what unfolds from that. I think there should be a production of the presentation or presentations, but that's it at this point.

And then you can take his deposition, both sides, and then I think get me a status report as to where things are. It seems to me that's the best way to proceed.

**MR. MOSES:** That's makes sense to us, Your Honor. If I could make two quick points.

**THE COURT:** Sure.

**MR. MOSES:** Two quick points: One, on the -- I'll be honest, I didn't follow everything that was said on the abatement, remediation, but what I did catch was reading from sections of our 10-K, which talk about capital expenditures, section of our 10-K talk about remediation accrued.

26

As we discussed at the hearing, the GAAP have rules, and companies apply them.

Second point, Your Honor found, I think this is Page 31 or 32 of your opinion that accounting judgments are out of this case. Those are actual opinions.

We are not here -- they have not made a case out that there's some or alleged sufficiently that this is an accounting case.

This is about what did that report say, and, you know, what were Vergnano and Kirsch told.

That's my quick response to what my colleague just said, but if you want a full response on the motion, we can give it.

**THE COURT:** You know, candidly, I forget about the rules for motion for reconsideration. I don't think there is a reply.

**MR. MOSES:** There is no reply.

**THE COURT:** But you know, if you want, put it this way, how long does it take before you get Kirsch deposed?

**MR. MOSES:** Your Honor, I think we'll probably do it in the month of April, depending on schedules.

**THE COURT:** You know what, I don't mind if you want to give them a week if you want to file a reply, then you get a sur-reply.

27

**MR. MOSES:** That's fine, Your Honor. Thank you.

**THE COURT:** Don't overwhelm me, you know, overwhelm me with number of pages. You know, do you want to make it 1500 words each?

**MR. MOSES:** Sound good, Your Honor. Thank you.

**MS. GRANT:** Thank you.

**THE COURT:** Then you have a week and a week.

**MR. MOSES:** Yeah.

**THE COURT:** And since the plaintiffs asked for it, the plaintiffs can submit a proposed order tomorrow that just says -- well, actually, hold on a second.

We'll enter an oral order that will confirm that. Go ahead.

**MR. MOSES:** And can we have a time limit on Mr. Kirsch's deposition? Make sure it sticks to this narrow issue. We had proposed in our form of order 3.5 hours to be split.

**THE COURT:** Right. I'm not going to enter a scheduling order. I am going to enter this, if you want to call it, a preliminary scheduling order.

**MR. MOSES:** Understood.

**THE COURT:** What I will say is that we'll proceed piecemeal or incrementally in the case, and we will, first, have his deposition because I think it could,

28

potentially, resolve the case, and if not the case, I think it would certainly streamline the case, narrow the issues.

And I had in my previous order suggested to have a stay while that was done. I don't have to impose a stay, but frankly, for the reason I would have agreed to impose a stay, in terms of streamlining the case, simplifying the issues for trial and promoting the efficient and cost effective litigation of this matter, I think we should proceed with the deposition.

His deposition should be completed by April 30th, and defendants need to produce, by next Wednesday, the presentation.

Is that possible?

**MR. MOSES:** Presumably, we can agree on a protective order.

**THE COURT:** Of course, there's a default protective order that takes place in this Court.

**MR. MOSES:** That would be fine.

**THE COURT:** You can do that or get in front of me a protective order in the meantime. All right.

And then as far as the time limits, is there any other dispute about his deposition besides time?

**MR. MOSES:** I don't know there is a dispute. We haven't had a chance to talk about it.

29

THE COURT: Why don't you confer about it. Maybe you will agree.

MR. MOSES: Why don't we confer, and if we need --

THE COURT: Well, no. Let's get this resolved here today.

MS. GRANT: In terms of time, we would like seven hours with Mr. Kirsch, particularly since the case seems to rise and fall based on his deposition.

THE COURT: Yeah, so --

MR. MOSES: We will split seven hours with them, Your Honor. If they get seven hours in their own, that seems to be quite a bit.

THE COURT: Right. But, you know, they don't even want to do this, right.

MR. MOSES: I will quit while I'm ahead.

THE COURT: The question is: Are you going to want some time?

MR. MOSES: We will need a little bit of time with him.

THE COURT: Right. All right. Why don't we give them up to seven hours, and if you want to bring him back for the second day, you get to.

In other words, I can't imagine you need seven hours, to be honest with you. I can't.

30

I will read the transcript if I have to, you know. I'm going to assume they are not going to waste his time.

On the other hand, I think they have areas that are fair. I think a lot of the matters counsel raised today are fair game to ask him, and --

MR. MOSES: Your Honor, Mr. Kirsch has a day job. He doesn't work for Chemours anymore. It's a little rough to have him come back for a second day.

THE COURT: Just do a --

MR. MOSES: Six and two or something like that?

THE COURT: Why don't we do seven and one, so they get their seven, and you can get at least an hour. Would that be enough time do you think, if you had to?

The truth is, like I said, I am going to read the transcript. If I see this is a complete waste of this gentleman's time --

MS. GRANT: Your Honor, we have no intention of wasting his time.

THE COURT: Right. It would depend on how he answers the question too, right.

MS. GRANT: Of course, Your Honor. We won't take seven hours to take seven hours.

THE COURT: That's my point.

31

Mr. Jameson.

MR. JAMESON: Your Honor, I offer an observation on depositions, time limits always concern me because what I've seen happen, where you put a precise time limit is people kind of run the clock, right. If you give nonresponsive answers, if you pause for a long time, suddenly you hit seven hours.

My suggestion would be that the Court not impose a specific time limit. Say, look, I want you to get it done within a day or something like that. The Court always has the ability to remedy misconduct at the deposition once you see the transcript. We understand you are going to read the transcript.

I'm confident the lawyers will be efficient. I just always -- I've had several bad experiences with defined time limits, where games get played and then we have to come back and fight with you about that, and that defeats the whole goal of efficiency that the Court is trying to achieve.

THE COURT: What do you think?

MR. MOSES: Well, Your Honor, the Federal Rules -- we are not in Chancery Court. The Federal Rules do set a seven-hour time limit. Look, Your Honor --

THE COURT: Presumptively.

MR. MOSES: It is presumptive, Your Honor. You

32

have the power to change it. We will work with plaintiffs. No time limits are necessary.

THE COURT: What you should be sensitive to let's say for argument's sake, and only for argument's sake, I have not prejudged this.

Let's say for argument's sake out of the deposition, you are going to bring some kind of motion that you think will dispose of the case or significantly streamline it, what I would want, I would never be comfortable with going along with that unless I was, first, comfortable that they had a full and fair opportunity to dispose Mr. Kirsch. That's what you need to keep in mind.

MR. MOSES: Fair enough.

THE COURT: I'm inclined to agree with Mr. Jameson having seen obstreperous behavior and dilatory behavior in a deposition.

So I think, you know what, I have good lawyers on both sides. Why don't I leave it to you to get that done.

MR. MOSES: That's fine with us, Your Honor. If Mr. Kirsch needs to go to a second day just because of his stamina, we will deal with that as well.

THE COURT: Thank you. All right.

MR. MOSES: Thank you.

THE COURT:  Anything else I need to resolve?

MS. GRANT:  No, Your Honor.

THE COURT:  No.  All right.  Have a good day.

Thank you.

(The proceedings concluded at 11:36 a.m.)

CERTIFICATE OF COURT REPORTER

I hereby certify that the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Bonnie R. Archer
Bonnie R. Archer, RPR
Official Court Reporter
U. S. District Court

MR. FRIEDLANDER: [1] 3/14
MR. JAMESON: [2] 3/6 31/2
MR. MOSES: [40]
MS. GRANT: [38]
THE COURT: [81]

**$**

$2 [3] 12/16 12/19 13/23
$2 billion [2] 12/19 13/23

**-**

-and [2] 1/20 2/6

**/**

/s [1] 34/7

**1**

10-K [5] 19/16 19/19 19/20 25/23 25/24
100 [1] 23/21
1030 [1] 18/13
11 [2] 6/7 6/22
11:00 [2] 1/9 3/2
11:36 [1] 33/5
12 [4] 7/1 7/1 7/3 7/19
127 [2] 7/23 12/23
129 [2] 7/25 13/1
135 [1] 12/23
15.3 [2] 17/25 17/25
1500 [1] 27/5
184 [1] 23/21
185 [1] 23/21
186 [1] 23/21
1:19-CV-01911-CFC [1] 1/4

**2**

200 [1] 9/8
201 [1] 20/2
2018 [2] 11/17 12/5
2019 [1] 19/20
2022 [1] 1/7
24 [2] 1/7 8/3

**3**

3.5 [1] 27/17
30 [1] 17/23
30th [1] 28/12
31 [1] 26/4
32 [1] 26/4

**4**

40-1030 [1] 18/13
410 [1] 20/17
410-30 [1] 17/23
4B [1] 3/2

**5**

50 [1] 19/20
51 [1] 20/13
523 [2] 18/13 18/13
56 [6] 7/1 7/4 7/5 10/11 10/13 10/15

**6**

66 [1] 12/13
671 million [2] 11/22 13/4

**7**

70 [1] 12/13

**8**

844 [1] 1/12

**9**

93 [1] 23/21
94 [1] 23/21
9th [1] 7/13

**A**

a.m [3] 1/9 3/3 33/5
abatement [25] 6/2 15/18 16/1 16/2 16/8 16/12 16/14 16/21 16/21 16/24 17/21 18/1 18/1 18/2 19/17 19/21 20/23 20/25 21/1 21/4 21/4 21/13 22/3 23/22 25/22
ability [1] 31/11
able [1] 14/16
about [29] 8/9 8/25 10/19 11/19 12/6 14/8 15/22 16/2 16/20 16/23 17/20 18/1 20/11 21/16 22/7 23/6 23/7 23/12 24/4 24/23 25/6 25/23 25/24 26/9 26/14 28/23 28/25 29/1 31/17
absolutely [2] 6/1 10/4
according [1] 12/7
account [1] 13/9
accounting [9] 16/6 17/22 17/23 17/24 18/6 20/17 21/17 26/4 26/8
accruable [1] 20/15
accrued [1] 25/25
accurate [1] 34/5
achieve [1] 31/19
action [4] 18/16 18/17 18/22 19/3
actions [5] 18/18 18/19 18/23 19/4 19/4
activities [1] 19/18
activity [1] 19/22
actual [3] 20/5 22/9 26/5
actually [3] 21/18 22/9 27/12
address [2] 6/6 25/4
advisable [1] 11/11
affects [1] 23/2
affidavit [2] 5/19 7/15
affidavits [1] 7/14
after [1] 11/2
again [1] 22/7
against [1] 6/17
agree [8] 12/20 12/21 14/6 14/10 14/22 28/15 29/2 32/15
agreed [1] 28/6
agreement [2] 16/10 19/10
ahead [2] 27/14 29/16
air [1] 19/23
all [24] 3/12 3/19 4/3 5/11 9/20 9/20 13/24 14/8 14/24 16/2 16/20 20/6 20/22 21/8 21/8 22/13 22/14 23/19 23/20 24/1 28/21 29/21 32/24 33/3
allegation [1] 12/18
allegations [10] 6/20 7/3 7/22 10/18 11/17 11/19 12/3 12/6 13/19 24/17
alleged [2] 14/17 26/7

alleviate [2] 18/24 18/25
along [1] 32/10
also [11] 13/14 15/17 16/5 16/9 16/17 16/25 17/3 18/22 19/16 21/22 22/21
although [1] 7/18
always [3] 31/3 31/11 31/15
am [5] 12/9 15/10 16/3 27/20 30/16
amended [1] 12/10
analyses [1] 15/5
analysis [3] 6/7 11/20 12/6
another [1] 20/10
answer [3] 7/6 8/7 9/6
answers [2] 30/22 31/6
any [5] 7/5 12/23 13/16 14/25 28/23
anymore [1] 30/8
anything [2] 18/1 33/1
anyway [1] 4/5
apparently [1] 10/20
appeal [2] 6/21 6/21
APPEARANCES [2] 1/17 2/3
applications [1] 15/13
applies [1] 18/9
apply [1] 26/2
appreciate [1] 25/1
approach [1] 9/2
appropriate [1] 24/10
April [2] 26/22 28/12
April 30th [1] 28/12
apt [2] 7/18 8/11
Archer [2] 34/7 34/8
are [42]
areas [1] 30/4
argue [1] 20/22
argument [7] 9/5 9/7 9/12 9/15 9/18 16/15 17/6
argument's [3] 32/4 32/4 32/6
arguments [1] 21/11
arms [1] 5/22
around [2] 3/25 5/22
as [20] 6/1 7/4 8/5 13/7 14/13 15/16 15/25 17/16 17/16 18/23 21/4 21/5 22/1 22/19 23/6 25/14 26/1 28/22 28/22 32/23
ASC [2] 17/23 20/17
ASC-410 [1] 20/17
ask [2] 4/19 30/6
asked [3] 16/23 16/24 27/10
asking [1] 16/18
assess [1] 18/20
associated [2] 20/2 20/16
assume [2] 11/15 30/2
assuming [1] 16/3
attributing [1] 5/8
August [2] 11/17 12/5
August 2018 [2] 11/17 12/5
authorities [1] 22/10
authority [7] 10/6 10/9 11/8 11/11 14/11 14/22 14/23
avoid [1] 14/20
away [3] 4/20 6/5 10/24

**B**

back [5] 17/3 17/10 29/23 30/9 31/17
bad [1] 31/15
bare [1] 13/6

based [4] 4/17 10/18 14/17 29/9
basis [2] 5/14 10/22
be [35]
because [14] 4/5 5/8 6/21 8/11 9/14 11/25 16/24 17/2 22/5 22/10 24/23 27/25 31/4 32/22
before [8] 1/14 9/4 13/14 22/22 23/6 23/9 25/4 26/19
behalf [3] 10/2 23/5 23/14
behavior [2] 32/16 32/17
behind [1] 14/20
being [3] 5/18 9/6 16/25
believe [2] 6/1 21/3
besides [1] 28/23
best [2] 25/8 25/15
better [2] 6/19 22/8
between [2] 16/11 19/10
beyond [1] 22/19
billion [3] 12/16 12/19 13/23
bit [2] 29/13 29/19
board [8] 11/16 12/4 12/15 13/14 13/14 15/3 24/7 24/9
Bonnie [2] 34/7 34/8
both [4] 3/9 24/8 25/13 32/19
brief [1] 17/16
bring [5] 5/14 7/4 9/6 29/22 32/7
BROOKE [1] 2/9
Brooks [1] 3/18
brought [1] 17/5
BRUCE [2] 1/19 3/6
buckets [2] 9/10 9/11

**C**

C.A [1] 1/4
call [1] 27/21
calls [1] 23/16
came [1] 9/15
Campo [6] 7/18 7/19 8/11 8/11 10/6 10/7
can [30] 4/16 5/12 6/6 7/4 7/4 8/25 12/1 12/23 15/11 15/20 16/3 16/5 16/9 16/13 16/15 16/16 16/16 17/12 20/19 20/24 22/14 24/13 25/10 25/13 26/13 27/11 27/15 28/15 28/20 30/13
can't [3] 8/6 29/24 29/25
candid [1] 5/19
candidly [1] 26/14
capacity [1] 20/20
capital [6] 20/11 20/16 20/18 21/16 21/18 25/24
capitalized [1] 20/19
captioned [1] 12/13
care [1] 4/4
Carolina [1] 20/4
case [23] 5/24 6/5 7/9 10/18 10/22 11/2 11/6 14/13 14/15 14/18 22/1 23/12 25/5 26/5 26/6 26/8 27/24 28/1 28/1 28/2 28/7 29/8 32/8
caseload [1] 24/23
cases [4] 6/23 8/16 9/2 10/17
catch [1] 25/22
categorically [2] 18/2 21/20
cause [1] 19/7
centerpiece [1] 12/19

## C

CERCLA [1] 19/3
certain [1] 20/15
certainly [5] 15/15 16/8 17/15 20/23 28/2
CERTIFICATE [1] 34/2
certify [1] 34/4
cessation [2] 18/8 18/10
CFC [1] 1/4
chance [1] 28/25
Chancery [1] 31/22
change [1] 32/1
charges [1] 20/1
CHEMOURS [7] 1/3 6/3 11/23 12/14 16/11 19/11 30/8
Circuit [1] 7/13
cite [5] 8/16 16/6 16/6 17/22 17/25
cited [1] 11/1
Civil [1] 25/8
clarification [2] 17/5 23/24
clarified [2] 9/17 9/19
clean [1] 13/9
cleanup [2] 18/15 18/17
clear [3] 9/19 16/11 20/23
clock [1] 31/5
closure [1] 18/7
colleague [1] 26/11
colleagues [1] 3/16
collection [1] 19/22
COLM [1] 1/14
come [4] 6/25 16/21 30/9 31/17
comes [2] 15/24 25/4
comfortable [2] 32/10 32/11
coming [1] 22/10
commenced [1] 3/2
commitment [1] 21/25
committee [1] 24/7
communications [1] 15/8
companies [1] 26/2
company [6] 1/3 13/5 13/10 22/23 23/6 23/10
company-wide [1] 13/10
compelling [1] 8/5
complaint [6] 5/14 12/10 21/2 21/4 23/22 24/22
complete [2] 10/11 30/17
completed [1] 28/11
conceded [1] 10/5
concern [2] 5/25 31/3
concerns [1] 8/5
conclude [1] 7/8
concluded [1] 33/5
conducted [1] 13/7
confer [2] 29/1 29/3
Conference [1] 1/8
confident [1] 31/14
Confidential [1] 7/23
confirm [1] 27/13
Congress [4] 22/22 23/1 23/6 23/9
connection [2] 20/3 22/25
CONNOLLY [1] 1/14
consent [2] 20/3 22/5
consider [1] 24/15
consistent [2] 14/7 17/4
containment [1] 18/15
contents [1] 5/5
context [3] 7/12 9/10 18/10

CONTINUED [1] 2/3
contradicts [1] 5/20
control [2] 18/5 18/9
controls [1] 19/23
copies [1] 3/23
copy [1] 12/10
corporate [2] 21/22 21/24
cost [5] 12/16 12/19 18/6 20/18 28/9
costs [16] 13/8 17/24 18/5 18/5 18/9 18/13 18/14 18/15 19/17 19/21 20/2 20/12 20/15 20/15 21/19 22/4
could [8] 5/18 5/21 7/2 7/15 7/15 15/14 25/18 27/25
counsel [6] 1/23 2/10 3/8 3/16 24/12 30/5
Couple [1] 23/10
course [2] 28/17 30/23
COURT [16] 1/1 1/14 10/2 10/6 10/11 10/25 11/2 15/13 28/18 31/8 31/11 31/18 31/22 34/2 34/8 34/9
Courtroom [1] 3/2
credibility [6] 8/16 11/14 22/21 23/2 23/16 25/6
culminated [1] 13/12
curiosity [1] 17/11
curious [1] 17/1
current [2] 8/1 18/6
CV [1] 1/4
CW3 [2] 13/3 13/7

## D

damage [1] 18/20
danger [1] 19/8
database [1] 8/12
date [1] 24/12
day [6] 29/23 30/7 30/9 31/10 32/22 33/3
deal [1] 32/23
deals [1] 17/23
dealt [3] 7/13 10/7 21/13
deciding [1] 5/24
decision [2] 6/9 17/14
declaration [3] 11/13 14/5 23/14
default [1] 28/17
defeats [1] 31/18
defend [1] 9/13
defendant's [1] 19/16
defendants [17] 2/10 4/6 8/4 10/5 11/1 12/15 14/3 14/7 14/18 15/4 17/22 20/8 20/11 20/24 21/5 23/14 28/12
defined [3] 18/17 18/23 31/16
defines [2] 19/3 19/11
definition [2] 18/12 18/23
definitions [2] 16/9 20/22
DELAWARE [2] 1/2 1/12
depend [1] 30/21
depending [1] 26/22
depose [1] 11/3
deposed [3] 10/24 14/14 26/20
deposition [19] 4/9 4/18 10/12 11/7 15/11 16/4 22/14 24/13 25/9 25/13 27/16 27/25 28/10 28/11 28/23 29/9 31/12 32/7 32/17

depositions [1] 31/3
describe [2] 20/6 20/8
described [3] 20/1 20/6 21/5
detailed [1] 7/25
did [14] 3/22 5/14 5/25 7/21 8/12 8/13 8/17 8/18 9/5 12/8 21/1 21/3 25/22 26/9
didn't [5] 5/17 9/4 9/6 17/17 25/21
different [1] 16/1
dilatory [1] 32/16
disclosed [3] 6/3 21/24 21/25
discovery [8] 5/2 5/4 11/6 14/19 15/2 15/6 15/15 22/19
discussed [2] 12/24 26/1
dismiss [7] 5/17 7/3 7/4 8/6 10/7 11/3 12/20
dismissal [2] 6/5 6/20
dismissed [1] 14/18
disposal [1] 19/22
dispose [2] 32/8 32/12
dispute [3] 10/8 28/23 28/24
DISTRICT [4] 1/1 1/2 1/14 34/9
do [45]
does [4] 10/6 18/2 18/12 26/19
doesn't [4] 15/5 16/7 18/1 30/8
doing [1] 13/6
don't [26] 3/24 5/4 5/21 6/21 7/9 10/5 10/8 10/13 11/4 11/8 11/10 11/11 16/17 21/3 25/6 26/15 26/23 27/3 28/5 28/24 29/1 29/3 29/14 29/21 30/12 32/19
done [4] 14/24 28/5 31/10 32/20
DuPont [3] 11/25 16/11 19/10

## E

each [1] 27/5
effective [1] 28/9
effects [1] 18/24
efficiency [2] 20/21 31/18
efficient [4] 10/17 10/23 28/9 31/14
efficiently [1] 24/25
effort [1] 14/8
either [2] 7/2 15/9
eliminate [2] 18/24 19/1
ELLIOTT [1] 1/18
else [2] 8/22 33/1
emissions [3] 19/24 21/6 21/7
encompassed [1] 21/18
encourage [1] 9/1
end [2] 9/18 9/19
endanger [1] 19/13
endangering [1] 19/14
engage [1] 14/19
enlightenment [1] 13/5
enough [3] 8/9 30/14 32/14
enter [3] 27/13 27/19 27/20
entering [1] 21/7
entertain [1] 15/15
entitled [1] 15/4
environment [9] 13/8 18/21 18/25 19/2 19/6 19/9 19/15 21/7 22/8
environmental [4] 8/1 19/16

20/14 23/7
especially [1] 25/3
ESQ [6] 1/19 1/21 2/5 2/8 2/8 2/9
essentially [1] 6/24
estate [2] 8/12 8/14
estimated [1] 20/15
evaluation [2] 13/8 21/11
even [4] 15/7 16/19 21/16 29/15
event [1] 19/4
ever [1] 11/2
every [2] 21/25 22/1
everything [1] 25/21
exactly [2] 4/6 23/11
exclude [1] 18/2
excluded [2] 18/4 21/20
exclusive [2] 21/20 21/21
executive [1] 24/7
exhaustive [2] 7/24 13/7
existing [1] 19/1
expenditures [3] 19/17 20/19 25/24
expenses [1] 20/5
expensive [1] 15/6
experiences [1] 31/15
explain [1] 23/3
explore [1] 22/14
exposed [1] 13/6
extend [1] 20/19

## F

F51 [1] 20/6
F52 [1] 20/6
F53 [1] 20/6
facilities [2] 18/8 18/11
fact [2] 10/5 11/14
fair [5] 14/19 30/5 30/6 32/11 32/14
fairness [2] 16/23 17/17
faith [1] 5/13
fall [1] 29/9
far [1] 28/22
Fayetteville [4] 20/3 20/5 22/1 22/5
Federal [3] 16/10 31/21 31/22
few [6] 15/19 15/19 17/20 22/23 23/9 23/13
fight [1] 31/17
figure [1] 14/24
file [5] 4/12 4/13 7/1 16/17 26/24
filed [2] 3/20 3/25
files [1] 23/13
fine [4] 11/5 27/1 28/19 32/21
firm [1] 3/10
first [3] 17/22 27/25 32/11
five [1] 3/25
Fluoroproducts [1] 12/14
Focus [1] 12/12
folding [1] 22/9
follow [2] 5/12 25/21
foregoing [1] 34/4
forget [1] 26/14
form [2] 11/6 27/17
formed [1] 24/19
former [1] 12/14
forward [5] 5/17 6/2 10/18 10/23 24/2
forward-looking [1] 6/2

**F**

found [2]  11/1 26/3
foundation [1]  15/12
frankly [4]  4/6 8/8 17/11 28/6
FRIEDLANDER [5]  2/5 2/5 3/13 3/15 3/15
friend [1]  10/14
friends [1]  24/4
front [1]  28/20
full [3]  10/11 26/12 32/11
fully [1]  5/18
fulsome [2]  14/19 15/6
further [1]  15/12
future [2]  18/7 19/8

**G**

GAAP [4]  5/25 8/5 8/20 26/1
game [1]  30/6
games [1]  31/16
gave [3]  7/23 7/24 12/14
gentleman's [1]  30/18
get [19]  5/22 6/14 6/14 14/24 15/7 24/21 24/24 25/14 26/19 26/25 28/20 29/5 29/12 29/23 30/13 30/13 31/10 31/16 32/19
gets [1]  6/12
give [9]  4/17 4/20 15/19 24/7 24/11 26/13 26/24 29/22 31/6
given [3]  8/21 15/3 24/17
giving [1]  24/4
go [6]  3/24 4/8 6/5 9/4 27/14 32/22
goal [1]  31/18
goes [1]  21/8
going [30]  4/5 4/12 4/13 4/19 4/20 5/17 6/2 6/20 10/16 10/18 10/23 14/11 14/21 15/9 15/10 16/17 17/1 17/9 17/12 24/1 25/3 27/19 27/20 29/17 30/2 30/2 30/16 31/13 32/7 32/10
good [8]  3/5 3/6 3/14 5/13 10/1 27/6 32/18 33/3
GORRIS [2]  2/5 3/15
got [2]  5/8 8/19
government [1]  22/10
governs [1]  18/4
grant [5]  1/21 3/9 3/10 5/17 10/2
green [1]  6/2
guess [1]  9/22
guidance [6]  16/6 17/22 17/23 17/24 20/17 21/17

**H**

had [11]  5/13 11/24 11/25 13/5 17/8 27/17 28/4 28/25 30/15 31/15 32/11
hand [2]  3/23 30/4
handle [1]  14/14
happen [4]  4/16 7/10 9/3 31/4
happened [2]  6/23 6/24
happens [1]  11/23
has [7]  6/23 8/21 11/2 14/4 16/21 30/7 31/11
have [55]
haven't [5]  16/19 17/14 20/9 25/4 28/25
having [1]  32/16

hazardous [6]  18/18 18/25 19/2 19/5 19/7 19/12
he [18]  5/19 7/23 10/20 11/24 12/6 12/8 22/21 22/22 22/23 22/25 23/1 23/5 23/9 23/10 23/11 23/13 30/8 30/21
health [2]  19/9 19/14
hear [2]  9/23 9/24
hearing [1]  26/1
heavily [1]  21/17
heavy [1]  24/23
held [1]  8/2
here [14]  5/6 6/13 7/9 7/17 7/21 9/3 9/13 13/24 21/13 22/20 24/4 24/23 26/6 29/6
hereby [1]  34/4
highlight [1]  22/1
highlighted [1]  22/6
him [6]  6/17 10/24 29/20 29/22 30/6 30/9
his [14]  11/14 14/5 16/1 23/2 23/16 24/12 25/13 27/25 28/11 28/23 29/9 30/2 30/20 32/23
hit [1]  31/7
hold [5]  6/17 12/1 12/9 12/9 27/12
holes [1]  13/24
honest [2]  25/21 29/25
honor [53]
HONORABLE [1]  1/14
HOOKER [2]  1/22 3/9
hope [1]  24/15
hour [2]  30/13 31/23
hours [9]  27/18 29/8 29/11 29/12 29/22 29/25 30/24 30/24 31/7
how [6]  14/24 17/11 24/1 24/2 26/19 30/21

**I**

I'll [1]  25/21
I'm [15]  3/16 4/6 4/11 4/23 5/7 5/9 10/13 14/11 15/9 16/17 27/19 29/16 30/2 31/14 32/15
I've [4]  4/3 24/22 31/4 31/15
imagine [1]  29/24
impose [3]  28/5 28/7 31/9
impress [1]  24/18
improve [1]  20/20
inclined [2]  4/11 32/15
include [7]  18/12 18/14 18/15 19/11 20/2 20/14 20/18
included [3]  16/12 20/12 20/23
including [5]  11/14 19/12 19/22 20/7 20/15
inconsistent [1]  23/5
increase [1]  20/20
incrementally [1]  27/24
incur [2]  19/17 19/21
incurred [1]  22/4
individual [1]  12/15
indoor [1]  19/14
inference [1]  8/5
inherited [2]  11/24 23/7
initially [1]  25/9
insisting [1]  10/14
installation [1]  19/23
instance [1]  5/16

intention [1]  30/19
interesting [1]  7/17
internal [1]  15/7
interviewed [2]  4/22 4/25
introduction [1]  3/8
intrusion [1]  19/13
investigator [5]  5/20 8/17 8/18 10/21 14/2
investigators [1]  5/1
is [71]
isn't [2]  5/13 22/7
issue [8]  5/13 7/8 8/25 16/21 16/21 16/24 17/5 27/17
issues [5]  5/12 11/14 22/20 28/3 28/8
it [80]
it's [12]  7/18 8/7 8/16 10/23 11/10 14/12 21/12 22/3 22/6 23/15 23/23 30/8
its [1]  22/21
itself [1]  13/6

**J**

JAMESON [4]  1/19 3/7 31/1 32/16
job [1]  30/8
JOEL [2]  2/5 3/15
John [1]  8/17
joined [1]  3/16
JONATHAN [2]  2/8 3/17
JONES [2]  1/18 3/7
Judge [2]  1/14 6/9
judgment [3]  4/13 6/6 24/19
judgments [1]  26/4
juncture [1]  10/4
jury [1]  23/17
just [19]  8/5 9/9 10/17 10/23 11/5 12/2 12/24 17/1 17/11 17/20 21/10 22/7 22/18 23/4 26/12 27/12 30/10 31/15 32/22
justify [1]  15/14
JUSTIN [2]  2/9 3/18

**K**

KATZ [1]  2/7
keep [1]  32/13
kind [4]  6/1 24/13 31/5 32/7
King [1]  1/12
Kirsch [25]  4/22 4/25 5/9 5/14 5/18 6/15 6/15 7/23 10/19 11/7 11/13 12/8 14/4 14/8 14/13 14/17 21/12 22/15 23/15 26/10 26/19 29/8 30/7 32/12 32/22
Kirsch's [10]  4/9 8/9 11/19 15/7 15/25 22/21 24/12 25/6 25/9 27/16
know [19]  5/9 5/25 6/19 7/13 8/2 8/20 20/8 22/18 24/24 26/10 26/14 26/18 26/23 27/3 27/4 28/24 29/14 30/2 32/18
knowing [1]  23/11
KYLA [3]  1/21 3/9 10/2

**L**

last [2]  3/22 3/25
later [8]  9/12 17/5 22/22 22/23 23/1 23/10 23/11 23/13
latter [1]  6/4

lawyer [2]  6/16 9/25
lawyers [2]  3/14 32/18
lay [2]  15/11 15/12
least [4]  15/3 15/7 16/13 30/13
leave [1]  32/19
leg [1]  17/8
Lester [1]  3/9
LESTOR [1]  1/22
let [2]  3/24 9/23
let's [8]  4/3 8/19 10/24 14/10 24/2 29/5 32/4 32/6
liabilities [8]  6/1 8/1 11/20 11/24 13/7 20/14 23/7 23/8
liability [2]  9/20 9/21
life [1]  20/20
like [8]  7/11 8/15 15/17 22/18 29/7 30/11 30/16 31/10
limit [4]  27/15 31/5 31/9 31/23
limited [2]  5/10 15/2
limits [4]  28/22 31/3 31/16 32/2
LIPTON [2]  2/7 3/17
listed [1]  18/22
litigation [4]  1/4 9/11 13/9 28/9
little [2]  29/19 30/8
Livonia [2]  6/10 6/23
long [5]  11/20 18/23 24/21 26/19 31/6
long-term [1]  18/23
look [9]  6/10 8/3 8/4 8/19 12/22 17/15 23/21 31/9 31/23
looked [2]  17/4 17/10
looking [2]  6/2 12/9
lost [1]  22/25
lot [2]  11/14 30/5

**M**

made [7]  9/19 10/19 11/16 12/4 17/14 21/11 26/6
maintenance [1]  19/23
make [11]  3/10 15/12 15/20 16/20 17/12 17/20 20/10 20/22 25/18 27/5 27/16
makes [2]  16/11 25/17
making [1]  24/24
manage [1]  14/12
mandatory [3]  6/8 6/22 24/17
March [1]  1/7
matter [4]  12/24 14/13 15/16 28/9
matters [3]  5/5 7/21 30/5
may [5]  5/19 6/11 10/1 18/14 18/19
maybe [7]  6/18 6/21 6/21 7/7 7/9 7/14 29/2
MDL [5]  11/21 12/7 13/4 13/17 13/19
me [17]  3/8 3/23 9/13 9/23 10/16 10/23 12/23 15/19 23/3 24/21 25/4 25/14 25/15 27/3 27/4 28/21 31/3
mean [8]  4/3 5/16 5/21 10/16 18/17 19/4 21/5 25/5
meantime [1]  28/21
measures [2]  16/12 20/7
meet [1]  4/5
meets [2]  22/24 23/11
memory [1]  17/4

**M**

mention [3] 11/18 12/5 17/18
migrate [2] 19/7 19/13
million [3] 11/22 13/4 20/2
mind [3] 14/23 26/23 32/13
minimize [2] 18/20 19/6
minimum [1] 13/6
minutes [1] 15/19
misconduct [1] 31/11
mistake [4] 9/7 9/8 9/16 9/17
mitigate [1] 18/20
moment [1] 13/5
monitor [1] 18/20
monitoring [1] 19/24
month [1] 26/22
months [3] 22/23 23/10 23/13
months' [1] 11/20
more [1] 15/15
morning [5] 3/5 3/6 3/11 3/14 10/1
MOSES [3] 2/8 3/17 3/18
most [2] 16/8 20/23
motion [16] 3/20 4/12 5/17 7/1 7/5 7/20 10/7 10/11 11/3 15/22 17/9 17/14 21/9 26/12 26/15 32/7
motions [1] 24/22
move [1] 24/2
Mr [6] 3/18 4/25 6/15 11/13 12/8 31/1
Mr. [30] 3/13 4/9 4/22 5/9 5/14 5/18 6/15 7/23 8/9 9/13 10/19 11/7 11/19 14/4 14/8 14/13 15/7 21/12 22/15 22/21 23/15 24/12 25/6 25/9 27/16 29/8 30/7 32/12 32/16 32/22
Mr. Friedlander [1] 3/13
Mr. Jameson [1] 32/16
Mr. Kirsch [18] 4/22 5/9 5/14 5/18 6/15 7/23 10/19 11/7 14/4 14/8 14/13 21/12 22/15 23/15 29/8 30/7 32/12 32/22
Mr. Kirsch's [9] 4/9 8/9 11/19 15/7 22/21 24/12 25/6 25/9 27/16
Mr. Yavitz [1] 9/13
Ms. [1] 3/10
Ms. Grant [1] 3/10
much [3] 3/19 11/24 11/24
multiple [1] 16/22
mutually [2] 21/20 21/21
my [13] 3/16 5/22 9/12 10/2 12/19 14/23 17/4 26/11 26/11 28/4 30/25 31/8 34/5

**N**

name [2] 10/2 24/11
narrow [2] 27/17 28/2
necessary [4] 8/13 9/13 18/19 32/2
need [16] 5/4 5/24 6/10 10/11 14/24 15/12 15/15 15/16 16/17 25/7 28/12 29/4 29/19 29/24 32/12 33/1
needs [2] 6/5 32/22
never [1] 32/9
new [2] 9/12 9/25
Newman [2] 15/5 24/8
next [4] 4/14 8/25 11/6 28/12
night [2] 3/22 4/1

no [14] 1/4 7/6 9/14 10/25 11/1 14/6 14/22 23/5 26/17 29/5 30/19 32/2 33/2 33/3
NOAH [1] 2/8 3/17
nonresponsive [1] 31/6
normally [1] 4/4
North [1] 20/4
not [50]
note [1] 21/22
notes [1] 34/5
nothing [2] 8/22 20/24
notion [1] 14/20
now [4] 10/5 10/20 16/15 16/16
number [1] 27/4

**O**

oath [1] 6/14
obligations [2] 22/9 22/11
observation [1] 31/3
obstreperous [1] 32/16
obtaining [1] 19/25
occasion [1] 23/12
occasions [2] 22/24 23/12
occurred [1] 13/4
offer [1] 31/2
Official [1] 34/8
offramp [3] 6/13 6/24 6/25
offramps [1] 6/13
Ohio [6] 11/21 12/7 12/23 13/4 13/17 13/19
Okay [4] 4/2 13/2 22/12 23/18
once [2] 11/23 31/12
one [20] 4/15 4/17 4/19 6/13 6/13 6/24 7/13 12/1 15/1 17/18 21/11 21/15 22/24 23/12 24/6 24/7 24/8 24/8 25/20 30/12
only [4] 11/5 11/18 23/9 32/4
operations [3] 18/6 18/8 18/11
opinion [1] 26/4
opinions [3] 7/12 25/6 26/5
opportunity [4] 6/14 8/21 16/14 32/12
oppose [1] 10/4
oral [4] 9/5 9/7 17/6 27/13
order [13] 11/3 20/3 22/5 24/11 27/11 27/13 27/17 27/20 27/21 28/4 28/16 28/18 28/21
other [8] 6/25 9/23 10/14 13/16 13/18 28/23 29/24 30/4
our [12] 5/1 5/6 6/20 11/17 11/19 12/3 12/6 20/14 24/4 25/23 25/24 27/17
out [7] 7/14 14/24 17/11 24/12 26/5 26/7 32/6
outdoor [1] 19/15
over [2] 22/6 22/7
overwhelm [2] 27/3 27/4
own [4] 21/6 21/17 24/16 29/12
oxidizer [1] 20/7

**P**

P.A [2] 1/18 2/5
Page [4] 8/3 19/20 20/13 26/4
Page 24 [1] 8/3
Page 31 [1] 26/4
Page 50 [1] 19/20

Page 51 [1] 20/13
pages [2] 12/13 27/4
papers [3] 4/4 17/7 21/6
Paragraph [3] 7/23 7/25 13/1
Paragraph 127 [1] 7/23
Paragraph 129 [2] 7/25 13/1
Paragraphs [2] 12/22 23/21
Paragraphs 93 [1] 23/21
part [3] 6/19 16/8 20/25
particular [2] 13/21 17/25
particularly [1] 29/8
partner [1] 9/13
party [1] 18/14
passing [2] 11/18 12/4
past [1] 7/19
path [1] 7/2
pause [1] 31/6
people [1] 31/5
performed [1] 21/12
perhaps [1] 16/13
permission [1] 16/18
permits [1] 19/25
person [2] 22/24 23/13
persuade [1] 7/8
PFAS [1] 23/7
piecemeal [1] 27/24
place [3] 7/19 11/6 28/18
plaintiff [5] 1/23 3/7 9/24 9/25 10/3
plaintiffs [4] 22/18 27/10 27/11 32/2
played [1] 31/16
please [3] 10/2 12/2 12/12
plug [1] 13/24
point [13] 8/6 8/23 15/18 15/21 16/9 17/9 20/10 20/24 24/14 25/7 25/12 26/3 30/25
pointed [1] 7/14
points [5] 15/19 17/12 17/20 25/18 25/20
pollution [5] 18/5 18/9 19/17 19/21 19/23
positions [2] 23/5 23/15
Posner's [1] 6/9
possible [2] 17/16 28/14
potentially [2] 18/14 28/1
power [3] 4/9 9/1 32/1
practical [1] 10/16
precedent [1] 11/1
precise [1] 31/4
prejudged [2] 25/5 32/5
preliminary [1] 27/21
present [2] 19/8 19/8
presentation [14] 3/10 4/20 5/25 7/24 11/15 11/16 11/18 12/4 12/15 13/13 15/2 22/19 25/11 28/13
presentations [8] 4/18 5/5 6/14 8/8 8/8 8/10 24/5 25/12
presented [2] 13/14 15/4
president [1] 12/14
Presumably [1] 28/15
presumptive [1] 31/25
Presumptively [1] 31/24
prevent [2] 18/20 19/6
preventing [1] 19/11
previous [1] 28/4
PRICKETT [2] 1/18 3/7
prior [1] 13/15
private [1] 10/21

probably [3] 7/7 8/8 26/21
probe [2] 16/3 16/3
problematic [1] 13/10
procedural [1] 7/19
proceed [4] 25/3 25/16 27/24 28/10
proceeding [2] 25/9 34/6
proceedings [2] 3/2 33/5
produce [1] 28/12
product [1] 5/11
production [2] 15/10 25/11
program [4] 21/23 22/6 22/7 22/8
progress [1] 24/24
project [1] 6/2
projects [4] 20/11 20/16 21/16 21/18
promoting [1] 28/8
prompted [2] 11/21 12/7
property [1] 20/21
proposal [2] 15/1 24/2
proposals [1] 14/25
propose [1] 24/3
proposed [3] 20/3 27/11 27/17
protective [4] 24/11 28/16 28/18 28/21
prove [1] 5/21
provide [1] 10/6
provision [2] 17/25 18/12
PSLRA [2] 6/22 14/20
PSR [1] 6/8
public [2] 19/9 19/14
publicly [2] 6/3 21/24
purport [1] 7/22
purportedly [1] 10/19
purpose [1] 6/11
purposes [1] 5/24
put [2] 26/18 31/4

**Q**

question [9] 6/15 8/12 10/16 14/23 17/18 23/16 23/17 29/17 30/22
questioning [2] 8/9 15/14
quick [4] 17/20 25/18 25/20 26/11
quit [1] 29/16
quite [1] 29/13
quotations [1] 5/8
quote [3] 14/4 14/5 14/6
quotes [1] 13/24

**R**

raised [2] 17/18 30/5
raises [1] 11/13
RE [1] 1/3
read [9] 4/3 6/9 9/4 16/19 18/3 20/9 30/1 30/16 31/13
reading [2] 7/12 25/23
real [2] 8/12 8/13
realized [1] 13/5
really [7] 8/16 8/22 11/19 12/6 12/19 17/1 24/15
reason [5] 5/16 16/24 21/12 22/4 28/6
recant [1] 12/8
recanted [1] 14/4
recanting [3] 7/13 11/13 23/13
recognize [1] 6/22
recommend [1] 23/20

**R**

reconsideration [5]  3/21 15/23 17/15 21/9 26/15
record [1]  10/12
reference [2]  12/23 13/16
referenced [1]  24/6
references [1]  13/23
referencing [1]  11/16
regarding [2]  11/14 13/19
release [7]  18/19 18/24 19/1 19/5 19/5 19/6 19/12
relevant [2]  6/11 21/13
rely [1]  21/17
remedial [3]  18/16 18/22 19/3
remediation [34]  5/25 6/3 7/24 8/1 8/4 8/6 8/20 9/10 9/20 9/21 12/16 12/18 13/8 15/18 16/9 16/10 16/12 17/20 17/24 18/5 18/13 19/3 19/11 20/5 20/12 20/18 20/24 20/25 21/14 21/19 22/4 22/11 25/22 25/25
remedy [1]  31/11
remember [6]  7/11 9/5 9/6 9/14 16/25 17/5
remembered [2]  17/2 17/3
removal [4]  18/15 18/17 18/18 19/4
repeat [1]  12/1
repeated [1]  14/4
replete [1]  13/22
reply [7]  16/14 16/17 16/18 26/16 26/17 26/24 26/25
report [11]  7/21 7/25 8/3 8/19 13/13 15/5 15/10 15/25 16/1 25/14 26/9
REPORTER [2]  34/2 34/8
reports [2]  21/24 21/25
represented [1]  11/25
require [2]  14/18 15/10
required [3]  13/9 18/7 18/10
requirement [1]  7/6
resigned [1]  23/2
resigns [2]  22/22 23/10
resolution [1]  10/17
resolve [2]  28/1 33/1
resolved [1]  29/5
respect [3]  15/22 15/25 18/6
respond [3]  15/18 16/14 17/12
response [9]  3/20 9/5 15/20 16/19 16/25 18/18 20/8 26/11 26/12
responsibility [2]  21/23 21/25
responsible [1]  18/14
restoration [1]  18/7
result [1]  13/7
review [2]  13/12 21/24
reviews [1]  11/17
right [27]  3/12 3/19 4/3 4/20 5/8 5/18 5/19 10/24 13/11 13/22 13/23 14/14 14/25 21/8 23/20 24/1 27/19 28/21 29/14 29/15 29/21 29/21 30/21 30/22 31/5 32/24 33/3
rightly [1]  7/14
rise [1]  29/9
ROSEN [1]  2/7
rough [1]  30/9
RPR [1]  34/8
Rule [10]  6/7 6/22 7/1 7/4 7/5

10/11 10/13 10/15 10/17 25/8
Rule 1 [1]  25/8
Rule 11 [2]  6/7 6/22
Rule 56 [6]  7/1 7/4 7/5 10/11 10/13 10/15
rules [5]  9/1 26/2 26/15 31/22 31/22
ruling [3]  6/4 11/2 12/20
run [1]  31/5

**S**

safety [1]  20/20
said [12]  7/11 8/3 9/7 10/20 10/20 11/21 12/2 14/1 22/19 25/21 26/12 30/16
sake [3]  32/4 32/5 32/6
sale [2]  18/8 18/11
same [4]  6/15 7/18 20/17 21/16
SAXENA [2]  1/21 3/9
say [20]  6/19 7/22 8/12 11/5 14/7 15/21 16/7 16/7 17/1 18/1 19/17 20/12 21/22 23/16 23/17 26/9 27/23 31/9 32/4 32/6
saying [4]  8/4 11/8 20/25 21/15
says [5]  16/7 18/14 20/1 20/14 27/12
schedules [1]  26/22
scheduling [2]  27/20 27/21
Sears [1]  8/14
second [7]  6/6 12/1 26/3 27/12 29/23 30/9 32/22
section [8]  12/13 13/20 13/21 13/22 18/4 20/1 20/2 25/24
sections [1]  25/23
SECURITIES [1]  1/4
see [6]  4/3 15/4 24/13 25/10 30/17 31/12
seems [4]  10/23 25/15 29/9 29/13
seen [2]  31/4 32/16
seizing [1]  17/6
sense [2]  8/15 25/17
sensitive [2]  25/2 32/3
separation [2]  16/10 19/10
septate [1]  23/12
served [1]  25/8
set [2]  24/1 31/23
settlement [1]  13/4
settling [1]  11/21
seven [11]  29/8 29/11 29/12 29/22 29/24 30/12 30/13 30/24 30/24 31/7 31/23
seven-hour [1]  31/23
several [2]  16/9 31/15
shifting [1]  23/15
shot [1]  8/17
should [12]  4/7 4/8 5/10 8/22 9/3 14/16 15/3 15/7 25/11 28/10 28/11 32/3
show [2]  8/24 12/23
showing [2]  7/24 12/16
side [2]  9/23 10/14
sides [2]  25/14 32/19
significant [1]  13/6
significantly [1]  32/8
simplifying [1]  28/8
since [4]  10/22 25/3 27/10

29/8
single [3]  10/12 11/3 11/13
site [2]  18/7 20/16
sites [1]  13/10
situation [2]  10/7 14/21
so [22]  3/20 4/3 4/7 5/10 7/15 8/6 8/15 9/2 9/4 14/21 16/2 16/13 17/9 18/9 18/13 19/7 19/13 21/17 23/15 29/10 30/12 32/18
sole [1]  10/22
solely [3]  10/18 14/17 15/2
some [7]  8/15 8/15 22/8 24/10 26/7 29/18 32/7
somehow [1]  8/24
something [7]  5/20 6/19 14/1 16/1 21/19 30/11 31/10
sorry [2]  4/23 22/25
sort [1]  24/10
sorts [1]  5/12
Sound [1]  27/6
speaking [1]  3/18
specific [1]  31/9
speedy [1]  10/17
split [2]  27/18 29/11
spokesperson [1]  23/6
stage [1]  11/12
stamina [1]  32/23
stand [1]  17/8
stated [1]  13/3
statements [2]  5/9 14/17
states [6]  1/1 1/14 13/3 18/3 20/18 21/18
stating [1]  15/25
status [2]  1/8 25/14
statute [1]  16/10
stay [6]  10/4 11/4 14/12 28/5 28/6 28/7
stayed [1]  11/2
stenographic [1]  34/5
step [1]  4/14
steps [1]  8/25
sticks [1]  27/16
still [2]  7/8 8/25
stopping [2]  21/6 21/6
straight [1]  4/8
streamline [2]  28/2 32/9
streamlining [1]  28/7
Street [1]  1/12
strike [4]  4/12 6/20 7/2 24/16
study [1]  22/2
style [2]  8/6 8/20
submit [1]  27/11
submitted [1]  5/19
substance [3]  18/25 19/2 19/5
substances [3]  18/18 19/7 19/12
substantial [1]  19/8
such [1]  14/13
suddenly [1]  31/7
sufficiently [1]  26/7
suggested [1]  28/4
suggesting [1]  22/7
suggestion [1]  31/8
summary [2]  4/13 6/5
suppose [2]  11/4 11/5
sur [1]  26/25
sur-reply [1]  26/25
sure [5]  3/24 4/6 16/16 25/19

27/16
surprised [2]  9/6 16/25

**T**

table [2]  3/9 3/16
take [8]  4/18 6/20 11/5 23/21 25/13 26/19 30/24 30/24
taken [2]  18/23 19/4
takes [1]  28/18
taking [2]  13/8 23/4
talk [5]  8/25 24/4 25/23 25/24 28/25
talked [1]  24/22
talking [3]  9/10 15/22 21/16
tally [1]  7/22
tell [3]  5/14 8/17 8/18
term [1]  18/23
terms [3]  15/12 28/7 29/7
test [2]  8/21 8/22
testified [2]  22/22 23/1
testifies [2]  23/5 23/9
testing [1]  19/24
Thank [10]  3/12 3/19 4/2 23/24 27/1 27/6 27/7 32/24 32/25 33/4
that [150]
that's [29]  4/19 5/6 5/7 6/24 8/2 8/11 9/2 9/22 10/22 11/11 12/4 14/14 14/19 15/16 17/10 18/13 21/19 21/19 22/5 22/13 23/19 25/12 25/15 25/17 26/11 27/1 30/25 32/12 32/21
their [11]  5/20 7/22 16/14 16/19 20/8 21/6 21/17 23/6 24/16 29/12 30/13
them [16]  3/23 3/24 4/17 4/20 5/15 8/21 17/17 22/10 22/24 24/4 24/8 24/11 26/2 26/24 29/12 29/22
then [15]  6/18 11/4 12/22 14/18 15/10 23/1 24/11 24/13 25/10 25/13 25/14 26/24 27/8 28/22 31/16
there [14]  6/22 8/7 13/16 13/18 15/19 20/10 20/24 22/20 24/6 25/10 26/16 26/17 28/22 28/24
there's [8]  7/6 7/8 8/22 8/24 10/25 14/22 26/7 28/17
thermal [1]  20/7
these [7]  6/23 7/13 11/20 20/7 20/22 22/4 24/16
they [44]
they'll [1]  24/15
they've [2]  5/8 21/11
thing [2]  4/19 11/5
things [4]  4/16 10/19 21/15 25/15
think [49]
thinking [2]  7/1 9/15
this [63]
those [2]  21/15 26/5
thought [2]  4/5 17/8
threat [3]  18/19 19/1 19/5
threaten [1]  19/13
three [2]  4/15 6/12
threshold [2]  14/13 15/16
through [3]  12/13 15/14 24/22
Thursday [1]  1/7
time [20]  7/5 24/21 25/2 27/15

**T**

time... [16] 28/22 28/23 29/7 29/18 29/19 30/3 30/14 30/18 30/20 31/3 31/5 31/6 31/9 31/16 31/23 32/2
times [1] 16/22
today [2] 29/6 30/6
told [2] 5/20 26/10
tomorrow [1] 27/11
too [1] 30/22
took [1] 24/21
total [1] 13/8
totally [2] 9/1 14/7
transcript [7] 17/4 17/10 30/1 30/17 31/12 31/13 34/5
treatment [1] 19/24
trial [1] 28/8
true [4] 5/7 6/1 7/15 34/4
truth [1] 30/16
try [2] 24/24 25/4
trying [1] 31/19
two [11] 3/22 21/15 21/20 22/22 22/24 23/1 23/12 24/6 25/18 25/20 30/11

**U**

ultimately [2] 5/21 13/13
under [8] 6/4 6/8 6/14 6/22 7/3 7/3 19/16 22/10
underlying [3] 11/20 13/13 15/5
understand [7] 5/11 8/3 10/20 17/19 21/5 24/20 31/12
understood [2] 11/23 27/22
undertook [1] 12/7
unfolds [1] 25/10
UNITED [2] 1/1 1/14
unless [1] 32/10
up [8] 3/23 12/9 12/9 13/9 15/24 16/21 24/2 29/22
upon [4] 18/7 18/10 21/18 24/18
us [4] 22/24 23/11 25/17 32/21
use [2] 21/1 21/4
used [2] 18/2 23/22

**V**

valuations [1] 8/13
value [1] 8/13
vapor [1] 19/12
veiler [1] 6/19
Vergnano [4] 15/4 15/8 24/8 26/10
versus [3] 9/10 15/18 17/20
very [5] 3/19 6/11 7/15 15/3 16/13
volition [1] 24/16
voluntarily [2] 22/23 23/11
voluntary [4] 16/2 21/23 22/6 22/8

**W**

WACHTELL [2] 2/7 3/17
wait [1] 10/8
want [22] 3/23 4/6 4/12 5/2 8/20 9/22 17/13 22/16 24/10 24/16 24/18 26/12 26/18 26/24 26/24 27/4 27/20 29/15 29/18 29/22 31/9 32/9

wanted [2] 16/5 20/10
was [36]
waste [4] 3/24 19/22 30/2 30/17
wastewater [1] 19/24
wasting [1] 30/20
way [10] 3/8 6/16 7/7 9/2 14/14 19/12 25/2 25/3 25/15 26/19
we [84]
we'll [6] 4/17 24/4 24/24 26/21 27/13 27/23
we're [4] 14/21 21/15 24/24 25/3
we've [2] 8/19 11/1
Wednesday [1] 28/13
week [3] 26/24 27/8 27/8
weeks [3] 22/22 23/1 23/9
welfare [2] 19/9 19/14
well [15] 6/11 7/4 7/15 9/14 10/8 10/10 11/4 13/18 15/24 15/25 16/20 27/12 29/5 31/21 32/23
went [2] 17/3 17/10
were [12] 4/5 9/9 11/21 11/24 12/7 16/12 17/1 17/6 17/11 24/6 24/6 26/10
what [42]
whatever [3] 15/11 17/12 25/4
when [7] 7/12 9/7 12/22 13/3 15/21 20/19 21/23
where [5] 8/16 24/13 25/14 31/4 31/16
whether [7] 5/13 6/5 14/12 14/12 22/3 22/3 24/15
which [17] 6/3 6/7 11/2 11/21 16/6 16/19 17/23 18/4 18/13 18/15 18/22 19/19 20/6 20/8 20/11 23/16 25/23
while [2] 28/5 29/16
WHITE [2] 1/21 3/10
who [2] 8/17 17/18
whole [2] 14/20 31/18
wholly [1] 21/23
why [11] 5/16 7/18 8/11 16/24 17/10 21/12 29/1 29/3 29/21 30/12 32/19
wide [1] 13/10
will [34] 3/10 3/18 4/18 4/21 7/7 7/8 7/9 7/10 9/24 11/5 15/11 15/15 17/15 17/16 17/19 18/3 22/17 24/7 24/10 24/11 24/12 25/3 27/13 27/23 27/25 29/2 29/11 29/16 29/19 30/1 31/14 32/1 32/8 32/23
Wilmington [1] 1/12
within [6] 9/1 16/12 18/9 20/23 21/19 31/10
witness [3] 7/23 10/12 11/3
won't [2] 6/17 30/23
wondered [1] 17/11
wondering [2] 5/7 5/9
word [3] 18/1 21/1 23/22
words [2] 27/5 29/24
work [4] 5/11 24/12 30/8 32/1
works [1] 7/2
worse [1] 11/24
worth [1] 23/23
would [36]
writing [1] 7/12

**Y**

YAVITZ [3] 2/8 3/17 9/13
Yeah [2] 27/9 29/10
year [2] 22/1 22/1
yes [7] 5/1 12/4 12/17 12/21 12/25 13/25 14/3
yet [3] 16/19 20/9 22/6
you [125]
You're [1] 4/13
you've [1] 5/19
your [66]