IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE THE CHEMOURS COMPANY
SECURITIES LITIGATION

C.A. No. 19-CV-01911-CFC

Tuesday, August 2, 2022

Status Conference

1:00 p.m.

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE COLM F. CONNOLLY
United States District Court Judge

APPEARANCES:

PRICKETT, JONES & ELLIOTT, P.A.
BY:  BRUCE E. JAMESON, ESQ.

-and-

SAXENA WHITE
BY:  JOSEPH WHITE, ESQ.
BY:  KYLA GRANT, ESQ.

Counsel for the Plaintiff

APPEARANCES CONTINUED:


                 FRIEDLANDER & GORRIS P.A.
                 BY:  CHRISTOPHER M. FOULDS, ESQ.

                           -and-

                 WACHTELL, LIPTON, ROSEN & KATZ
                 BY:  JONATHAN M. MOSES, ESQ.
                 BY:  JUSTIN BROOKE, ESQ.
                           Counsel for the Defendants



                    _ _ _ _ _ _ _ _ _

                   P R O C E E D I N G S

     (The proceedings commenced in Courtroom 4B at 1:00
p.m.)


          **THE COURT:**  Good afternoon.  Mr. Jameson, do
you want to go first?

          **MR. JAMESON:**  Thank you, Your Honor.  I rise to
do introductions.  Obviously, this is a status conference.

          **THE COURT:**  Yes.

          **MR. JAMESON:**  So we'll proceed in whatever form
the Court would like.  With me at counsel table is Joseph
White and Kyla Grant, both of the Saxena White firm.
Depending upon what the Court wants to talk about, I
anticipate Mr. White will probably do most of the talking;
although, depending what kind of detail you want to hear,
Ms. Grant may need to fill in some details.

**THE COURT:** Okay.  Sounds good.  Thank you very much.

Mr. Foulds.

**MR. FOULDS:** Good afternoon, Your Honor.  Chris Foulds from Friendland and Morris on behalf of the defendants.  I rise to just to reintroduce Jonathan Moses, as well as his colleague, Justin Brooke from Wachtell Lipton firm.  We also have a client representative, Nicole Perez, here as well.

Mr. Moses, to the extent anyone says anything, will be the one talking.

**THE COURT:** Okay.  Great.  I guess I'll start with a preliminary question.  There's a footnote in your brief, which asked me to take note of courts that have uniformly held that a dismissal without prejudice doesn't constitute a final adjudication.

Are you taking the position that I don't have to consider Rule 11 under the PSLRA?

**MR. WHITE:** Your Honor, quick question --

**THE COURT:** Come forward.

**MR. WHITE:** Good afternoon, Your Honor.  Joseph White of Saxena White.

Yes, I think without any other indicia that there may be something untoward or of a collusion or something else in the process that resulted in the

voluntary dismissal that would give the Court a reason to suspect that there might be been some violations, we think the record reflects in this case, we don't think a Rule 11 analysis is --

THE COURT:  I don't want to go with what the record thinks.  I just want to go with the preliminary, the threshold question about whether I have to do this.

MR. WHITE:  No, I don't believe you do, Your Honor.

THE COURT:  I mean, a final adjudication is not defined in the statute, you agree with that?

MR. WHITE:  Yes.

THE COURT:  There's a dismissal with prejudice here, not without prejudice.

MR. WHITE:  Correct.

THE COURT:  I had to expend significant judicial resources going through the complaint.  And there was discovery, limited, and that doesn't constitute adjudication.

I mean, the statute doesn't say a final adjudication on the merits, does it?

MR. WHITE:  I don't have the statute in front of me, Your Honor, but my recollection is it does not mention over merits.

THE COURT:  And it doesn't define final

adjudication, correct?

**MR. WHITE:** I don't believe that it does.

**THE COURT:** And the case had to be dismissed with a court order, correct?

**MR. WHITE:** Because of the nature of the class claims, yes, Your Honor.

**THE COURT:** And I did sign an order.

**MR. WHITE:** You did.

**THE COURT:** That finally disposed of the case.

**MR. WHITE:** Yes, Your Honor did.

**THE COURT:** Well, I think the better view -- and there's cases that have, I don't know off the top of my head, but in particular I know there's a case out of San Diego Federal Circuit, but I think the better view is I am required to do what I did under the statute's express terms, which is to decide whether or not Rule 11 was met. I don't think I have a choice but to do that.

**MR. WHITE:** Okay.

**THE COURT:** All right. And then the only question I have for you on that issue is, I think, it's a close call, is in describing the 2 billion figure or 1.8 as, quote, current environmental remediation costs when -- when I look at the notes of the investigators, Kirsch told them that the 2 billion figure was this -- and this is in the quotes from their notes -- to be prepared for future

regulation, unquote.

And that's consistent with his deposition testimony, with his recanting affidavit, you know, I don't know if it's fair to call it a recanting affidavit, but I will because you all did.  And that suggests some stretching.  Now, what do you say to that?

**MR. WHITE:**  I don't think it's a stretch, Your Honor.  When we plead the complaint, it's done the totality of the circumstances that we've looked at.  So we've also not only talked to Mr. Kirsch, we had talked to other confidential witnesses who received information from Mr. Kirsch that we then corroborated with other witnesses, we talked with our accounting expert, and when we brought all that together, part of what pled or attempted to plead was that there was this underlying scheme where they would consider something to be in the future when they knew that they needed to do it, and it was just a word game that was being played within the company was our allegation.

That all ties together with, you know, at some point for sure, Your Honor, if this case went through discovery and we got to trial, we would have a real issue in front of the jury as to how we define that term, and it would have been something that we would be probably arguing before the Court about as to how we present that definition.

And our expert would have said it's one thing; their expert would have said the opposite, most likely, and it would have been a point of contention.  So no, I don't think that that was stretched.  I think the way in which we did it was adequate.  And we were careful, even in the complaint we mentioned that Mr. Kirsch referred to it in another manner as well.  So we didn't try to put one over on the Court, if that's -- you know, to directly address it.

THE COURT:  No, no.  That's not what I think. I'm not saying you tried to put one over on me.  I'm just trying to do my duty as I see it under the statute, to press you.

MR. WHITE:  Okay.

THE COURT:  But I'm satisfied with your answer.

MR. WHITE:  Thank you.

THE COURT:  I think I'm fully satisfied with the answer.  So I don't think there's...I think Rule 11 was satisfied.  And I don't think I need to do anything further.  I read carefully the papers, the investigator's notes, they were very, very thorough.

I mean, I think as in all cases, and have been in law enforcement many times, you know, there is a -- I think as lawyers, you need to press investigators and to make sure they're not leading a witness or coming at a

report from a bias that influences how they draft the report.  But that's kind of what I'm inclined to do.

Does the defendant have anything they want to say?

MR. MOSES:  Your Honor, not on that.  I just want to say one thing there is, there was a -- and you may be issuing an order.  There was a suggestion in some of the papers that maybe Mr. Kirsch was pressured, and I think it's clear this was voluntary, he was represented by separate counsel, and our general counsel was mentioned.  So I just want to state that for the record that we take issue with any suggestion in that regard.

THE COURT:  Yeah.  I think, with Mr. Kirsch, you know, I mean, well, I wasn't going to comment either way, and you're welcome to state that for the record.  I don't recall it enough.  I didn't dwell on it, let's put it that way.

I think one of the things that the plaintiff pointed out is, you know, his recollection of events in terms of timing and number of meetings, for instance, could be subject to doubt given some of the contemporaneous records, and but memories are what they are.  But, anyway, your remarks for the record are noted.

MR. MOSES:  Thank you so much, Your Honor.

THE COURT:  All right.  And I don't think

there's anything else I really have to do, other than make that finding, and I think it's sufficient to make it in the record in court today.

MR. MOSES:  I think that's right, Your Honor.

MR. WHITE:  And for the record, Your Honor, just I have been doing this about 20 years now, securities class actions, and this is the first hearing of this nature that I've had where the Court felt compelled to do a Rule 11.  It might be only the second time I ever voluntarily dismissed a case too, so that could be a factor.

But we appreciate the Court's effort.  We strive hard in every case to do the best job we can with very limited information at the outset of a case, and it's intentional.

I think the PSLRA is designed to make it difficult for plaintiffs' lawyers to start these actions. We do the very best we can with the information that we have, and I'm happy that the Court came to the conclusion we adhere to the rules.

THE COURT:  All right.  Thank you for making your remarks.  And I did what I thought I had to do under the statute.  But I'm satisfied with the outcome and with my findings.

MR. MOSES:  Thank you, Your Honor.

MR. WHITE:  Thank you, Your Honor.

THE COURT:  And we'll go off the record.  That concludes the proceedings.

(The proceedings concluded at 1:18 p.m.)

CERTIFICATE OF COURT REPORTER

I hereby certify that the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Bonnie R. Archer
Bonnie R. Archer, RPR, FCRR
Official Court Reporter
U.S. District Court